## NATIONAL LABOR RELATIONS BOARD v. HUNTSVILLE MFG. CO.

No. 14315.

United States Court of Appeals
Fifth Circuit.

April 13, 1953.

Duane B. Beeson, Atty., A. Norman Somers, Asst. Gen. Counsel, David P. Findling, Assoc. Gen. Counsel, George J. Bott, Gen. Counsel, Fannie M. Boyls, Attys., National Labor Relations Board, Washington, D. C., for petitioner.

Mark L. Taliaferro, Birmingham, Ala. (Burr, McKamy, Moore & Tate, Birmingham, Ala., of counsel), for respondent.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

HUTCHESON, Chief Judge.

While in form this is an ordinary proceeding to enforce an order of the Labor Board, in substance and in fact it is quite different. For the question presented here is whether the board's decision as to the results of a representation election and its certification of the Textile Workers Union of America, C. I. O., as exclusive representative of respondent's employees, was and is invalid for the reasons put forward by respondent, and enforcement of its order should, therefore, be denied.

These reasons in general are that both the election upon which the certification was predicated, and the investigation of respondent's objections to it were improperly conducted; and that the board erred in not voiding the election and calling another as prayed for by respondent.

Relying in support of its position on N. L. R. B. v. Sidran, 5 Cir., 181 F.2d 671, a case from our court, respondent claims that here, as there, due process was denied.

Pointing out that certification proceedings under section 9(d) of the Act are not subject to direct review under section 10(f), the review section of the act, but the record in such proceedings is part of the record in an unfair labor practice proceeding based on refusal to bargain collectively with a certified union, and that both pro-

ceedings are therefore really one,[1] respondent urges upon us that the procedures followed and the decisions arrived at by the board in this case are contrary to and in violation of the applicable rules, regulations, statements and procedures of the board, especially Sec. 102.61, as are set down in its "series 6" which became effective March 1, 1951, 29 C.F.R. et seq. Supp. This, as it develops its procedural point, is that while the section places in the regional director the duty to investigate objections to an election, it does not impose upon the objector any duty to furnish him preliminary evidence or testimony supporting the objections, and no notice of hearing with the right to cross examine witnesses having been accorded respondent in connection with the investigation, the action of the board, in receiving and acting upon the report of the regional director violated due process.

In addition to its objection that the regional director did not afford it the hearing to which it was entitled, respondent makes what it regards as a fundamental objection to the whole proceeding, that Gardner, the agent assigned to investigate the election, conducted it for the board and that having himself been a participant in the matters to be investigated, he was essentially disqualified to conduct the investigation.

Respondent's second objection to the board's certification goes beyond procedure to assert that procedural questions aside, under the undisputed facts the board should have ordered a new election. The fundamental basis of this objection is that the election was a consent election, that in its conduct there was a departure from the terms of the consent in that, though it was agreed between respondent and the union that replaced strikers would not appear to vote, one of them did, and that in addition there was unfairness in the election in permitting union officers and others active in the union to act as watchers at it.

Meeting these contentions head on, the board counters each of them. As to the objection to the procedure followed by director and board in investigating respondent's objections to the election, the board points out: that, in accordance with its rules and practices, and upon receipt of the objections, it advised respondent that an investigation of the objections would be conducted by field examiner Gardner, and respondent was requested to submit *prima facie* evidence in affidavit form of persons having first hand knowledge respecting the matters raised by the objections; that instead of complying with the request, respondent protested against the assignment of Gardner on the ground that he had been the board's agent in charge of the election and a participant in some of the election procedure to which objection was made; and that in response to the regional director's request for *prima facie* evidence in affidavit form of the matters complained of, respondent submitted an affidavit substantially repeating the facts contained in the objection with respect to the reception of the ballot of a replaced striker and in effect ignoring respondent's remaining objection.

As to its refusal of respondent's request, that an employee other than Gardner be assigned to the investigation, the board, pointing out that respondent made it clear that its position was not intended to cast any imputation of any kind upon Mr. Gardner, insists that there was nothing in the objection or in the investigation to disqualify Gardner as an investigator.

As to respondent's claim that it was not obligated to furnish the regional director evidence supporting the objections made, and it was entitled to a formal hearing upon its objections, the board points to the record showing: that, though the director had invited respondent to present *prima facie* evidence, and Gardner had additionally requested it to present such evidence, of facts relating to the objections with which the affidavit of the attorney had not dealt, respondent, refusing to furnish any further information, had elected to stand on its poisition that Gardner was an improper person to conduct the investigation.

1. Pittsburgh Plate Glass v. N. L. R. B., 313 U.S. 146, 149, 61 S.Ct. 908, 85 L.Ed. 1251; N. L. R. B. v. Capitol Greyhound Lines, 6 Cir., 140 F.2d 754.

As the board correctly states the questions for decision on the record made, they are four: first, was the election invalidated by the reception, subject to challenge, of the ballot of the one replaced economic striker, because the union, though not the board, had agreed that such persons would not appear to vote; second, did the board properly hold that the election was not invalidated because employees who served as observers were officers or active supporters of the union; third, upon the failure of the respondent to comply with the request to furnish factual information, was it proper for the director to recommend to the board that the objections had not been supported by proof and for the board to approve this recommendation; and fourth, did the assignment of Gardner as a field investigator invalidate the investigation.

These are the undisputed facts with respect to the election:

There were 840 ballots cast for and 540 against the union; the election was conducted in strict conformity with the act and with the board's regulations and decisions. While it is true that there were union watchers, there is no evidence offered by the respondent showing, or tending to show, and it is not otherwise made to appear that these watchers conducted themselves improperly or in any way improperly influenced the election.

As to the voting of strikers contrary to the agreement between union and respondent, the evidence is undisputed that only one appeared at the election to vote or offer to vote. As to Gardner, no evidence is presented that Gardner conducted himself improperly in the conduct of the election, indeed, no claim is made that he did. Further, the record shows that before the election began, respondent was advised that if any of the strikers appeared to vote, their votes would be received subject to objections, and respondent did not withdraw its consent to the election, but proceeded with it.

Upon these undisputed facts, the board insists that the Sidran case invoked by respondent is inapplicable and that its action was unexceptionable and its order should be enforced.

We agree. There is nothing of substance to the claim that the reception, subject to challenge, of the one ballot, invalidated the election. This is so both because the respondent went on with the election after being advised that such ballots would be received subject to objection and because it is perfectly plain, the majority for the union being as large as it was, that the reception of this one ballot could not have had, it did not have, any effect on the election. It is further quite clear that the burden was not on the board to show that the election was fairly conducted but on the respondent to show that it was not.

In these circumstances, the failure and refusal of respondent to support its charges by tendering affidavits amounted in law and in fact to a waiver or abandonment of them, and the director and board were right in their position that, since respondent had not undertaken to support them, they would not be considered as presenting any vice in the election. Respondent's objection to Gardner's serving as field investigator was wholly without merit or substance. Its claim that in acting as field agent Gardner was in effect sitting as judge in his own cause, was an investigator of his own claimed wrongful actions, will not at all do. This is so because no complaint was made of any action of Gardner's as such and because the respondent expressly disclaimed any reflection on him. It is so, too, because none of the objections to the election involved him in the sense that his personal actions were under investigation.

Finally, taking the objections at their face, they are wholly insufficient to void the election. All that they amount to is, (1) a technical point that the election being a consent election, any departure from the terms of the consent, no matter how unimportant or whether it had, or could have, any effect on the election, avoided it, and (2) that the election was invalidated because the union watchers were necessarily interested in the success of their side.

434

While the election was a consent election as between employer and union, it was after all a board election to be held under the rules and regulations of the board. This being so, the mere fact that one of the parties to the agreement failed in one or more particulars to act as he had agreed to act could not invalidate the election unless the respect in which there was a failure had an unfair, unjust, or otherwise untoward effect upon the election.

Here it is conclusively shown that the qualified reception of one contested vote did not have, indeed could not have had, such an effect.

Respondent's point against the union observers is as plainly without substance. It is the well nigh universal practice that election watchers are chosen by and from those who are sufficiently interested in the result to be alert to see that no departures from correct practices are permitted to occur, and it is proper that this should be so. Section 102.61 of the board's Rules and Regulations states: "Any party may be represented by observers of his own selection subject to such limitations as the regional director may prescribe, and it is customary practice to permit a union to select union officers or leaders to act." Moreover, respondent knew the identity of the union observers in advance of the election and did not withdraw its consent.

In the absence of a showing, and none was made here, that these watchers improperly influenced the course of the election, or at least that they conducted themselves improperly, the fact that they were interested in the result could not be a ground for invalidating the election. Congress entrusted to the board the control of the election proceedings and the determination of the steps necessary to conduct an election. N. L. R. B. v. Waterman, 309 U.S. 206, 60 S.Ct. 493, 84 L.Ed. 704; Inland Empire District Council, etc., v. Millis, 325 U.S. 697, 65 S.Ct. 1316, 89 L. Ed. 1877; N. L. R. B. v. S. H. Kress & Co., 6 Cir., 194 F.2d 444. It was primarily for the board to determine whether the election was fairly conducted or was unfairly conducted and should be set aside.

We think it quite clear that action of the board, in finding and holding that the conduct of the election was not affected with irregularities preventing a free choice so that it should be set aside fully, conformed to the standard of a reasonableness which courts may exact of the board in the exercise of the discretion accorded it in determining "whether or not the election should be set aside for irregularities in procedure." N. L. R. B. v. National Plastic Products Co., 4 Cir., 175 F.2d 755, 758; N. L. R. B. v. Whittier, Mills Co., 5 Cir., 111 F.2d 474, 475.

The petition for enforcement is granted. The order will be enforced as written.