**NATIONAL LABOR RELATIONS BOARD**

v.

**TRINITY STEEL CO., Inc.**

No. 14764.

United States Court of Appeals
Fifth Circuit.
June 23, 1954.

A. Norman Somers, Asst. Gen. Cnsl., N.L.R.B., David P. Findling, Assc. Gen. Cnsl., N.L.R.B., Frederick U. Reel, Atty., N.L.R.B., George J. Bott, General Counsel, Alan R. Waterstone, Attorneys, National Labor Relations Board, Washington, D. C., for petitioner.

Carl B. Callaway, Dallas, Tex., for respondent.

Before BORAH and RUSSELL, Circuit Judges, and DAWKINS, District Judge.

BORAH, Circuit Judge.

This is a petition by National Labor Relations Board, filed pursuant to section 10(e) of the National Labor Relations Act, 29 U.S.C.A. § 160(e), seeking enforcement of the Board's order directing respondent Trinity Steel Company, Inc., to bargain with a designated union [1] as the representative of respondent's production and maintenance employees. The respondent resists enforcement of the order upon the principal ground that the Board acted arbitrarily and abused its reasonable discretion in determining that the union was the exclusive representative of respondent's employees with which it was obliged to bargain collectively.

The material facts are undisputed. In the year 1950, and before the present labor dispute arose the employees of the respondent steel company were given two separate wage increases. In June of 1951, respondent was attempting to work out some way in which additional wage increases could be given to the employees but was confronted with difficulties under the existing wage stabilization regulations because of prior increases granted in 1950. In order to resolve these difficulties respondent filed on October 4, 1951, a petition in proper form with the appropriate authorities seeking permission for a general wage increase in its plant. This petition was duly acknowledged by the Wage and Hour and Public Contracts Division of the U. S. Department of Labor on October 11, 1951, and the employees in respondent's plant were thereafter advised by the company executives that a petition for approval to raise their wages had been properly filed. This action on the respondent's part was not taken for the purpose of defeating the union and, in fact, there is no showing that it had anything to do with the union.

On August 17, 1951, and after the company had authorized its attorney to prepare and file an application for an increase in wages the union filed a petition with the Board alleging that it desired to be certified as representative of a substantial but unspecified number of respondent's employees for purposes of collective bargaining, pursuant to section 9(a) and (c) of the Act. Thereafter, a representation hearing was had and an agreement to the extent here pertinent was reached between respondent and the union as to the composition of an appropriate bargaining unit. However, respondent was unwilling to agree that the union was entitled to represent its employees and vigorously insisted that the union had made no showing of prima facie representative interest. The Board as part of its investigation to ascertain whether or not the union was an appropriate representative for the purpose of collective bargaining ordered that an election by secret ballot be conducted. Prior to the election, a special represent-

ative of the union named Cook learned that the employees had been advised by the executives of the company that an application for approval to raise the wages of the employees had been filed. In an effort to verify this advice Cook contacted the regional office of the Wage Stabilization Board in Dallas, Texas, but did not contact the office of the Wage and Hour and Public Contracts Division of the U. S. Department of Labor, which was the office acknowledging receipt of the application from the employer. Cook was advised by the regional office that no such application had been filed in that office and upon the sole basis of this information he immediately advised the employees that no such application had been filed by the company.

Thereafter, and on different occasions immediately preceding the election, Cook advised certain of the employees in attendance at the union meetings as well as individually, that the executives of the company had misrepresented the matter in question to them, that he had checked into the situation, and that an application for approval to raise their wages had not been filed. While there is no contention or evidence that Cook acted in bad faith in making these statements, it does affirmatively appear from the undisputed evidence that his investigation of the matter had not been complete and he did not have the correct information upon which to base the statements which he made. Prior to the election he never contacted any representative of the company in an effort to reconcile the discrepancy between what the company officials had told the employees about the matter in question and what he, Cook, had ascertained from his own inquiry. It further appears that at about the same time he made the misrepresentations above referred to Cook advised the employees (1) that the union would in fact secure a wage increase if they voted in its favor at the election, and (2) that a business trip which respondent's president Bender said he made to Washington, D. C., was either not made or at least was not a bona fide

trip, and Bender was merely using the trip as a pretense in order to avoid meeting with union representatives. As to the first numbered statement the record does not show any basis for Cook's promise that a wage increase could be procured only through the efforts of the union. And such statement made in connection with the misrepresentations that the company was making no effort to obtain wage increases obviously led the employees to believe that the only way in which they had a chance to secure wage increases was to vote for the union regardless of whether or not they desired that the union be made their bargaining representative. As to the second numbered statement there is no question but that Bender did make the trip, for a legitimate business reason, and that Cook's statement was erroneous and recklessly made.

On November 13, 1951, the election was held and a total of 57 votes were cast, including 39 votes for the union and 18 against it. Within the next few days executives of the company learned of the misrepresentations which had been made by Cook and filed timely "Objections to the Conduct of the Election and Conduct Affecting the Results of the Election", on the principal ground that the union interfered with the employees' expression of a free choice in the selection of a bargaining representative by repeatedly making misrepresentations to the employees, and by promising them wage increases. These objections were overruled by the Regional Director and the respondent filed exceptions to his report. On January 31, 1952, the Board found no merit in the exceptions, adopted the Regional Director's report, overruled the objections, and certified the union as the exclusive bargaining representative of respondent's employees in the described bargaining unit. During the next several weeks no negotiations were had between respondent and the union and in February, 1952, the union filed unfair labor practice charges with the Board alleging that on or about November 15, 1951, and at all times since

the company refused to bargain collectively with the authorized union representatives. The usual administrative proceedings under section 10 of the Act followed. Throughout these proceedings, respondent contended that it was under no duty to bargain with the union as the exclusive representative of its employees for the reasons set forth in its objections and exceptions. It further contended that it had not in fact refused to bargain. These contentions were rejected by the trial examiner who issued his intermediate report, finding that respondent had engaged in the unfair practices charged. Thereafter, the Board issued its decision and order adopting, so far as here material, the recommendations of the trial examiner, and ordered respondent to cease and desist from its unfair labor practices, to bargain with the union upon request and to post appropriate notices. This petition for enforcement followed.

 We think the certification of the union by the Board does not have to be recognized by the respondent employer in this case. In the first place, the Board clearly erred in overruling respondent's objections [2] on the principal and unsubstantial ground that the respondent was privileged to answer Cook's statements "in a reasonable manner if it so desired." The entire record of the case is to the contrary and to the effect that the first information the executives of the company had of the misrepresentations in question was after the election had been held. Secondly, the Board itself has established the principle that an election can serve its true purpose only if the surrounding conditions enable employees to register a free and untrammeled choice for or against a bargaining representative, and that when a record reveals conduct so glaring that it is almost certain to have impaired employees' freedom of choice, the election should be set aside. General Shoe Corp., 77 N.L.R.B. 124, 126. Clearly this reasoning should have been applied here for it seems to us that no one could in fairness or with any reasonable degree of assurance confidently say that the employees at the election would have unquestionably voted as they did vote if the misrepresentations hereinabove referred to had not been made. The tally of ballots is the only evidence in this record of the pro or anti union sentiments of the employees and it certainly cannot under the facts of this case be said to present convincing evidence of majority support, or to represent the true will and desire of employees acting under a correct understanding of the facts. We recognize that it was primarily for the Board to determine whether the election was fairly conducted or was unfairly conducted and should be set aside. However, it is the court's responsibility to see that the Board keeps within reasonable grounds [3] and where as here the standard of reasonableness appears to have been misapprehended, the Board's findings must be set aside. On the basis of the showing here made we think it clear that the activities of the union representative constituted an interference with the freedom of choice guaranteed by the Act to the employees and that the election was affected with irregularities and should be set aside. Southwestern Electric Service Co. v. N. L. R. B., 5 Cir., 194 F.2d 939; Detroit Creamery Company, 60 N.L.R.B. 178; see N. L. R. B. v. Huntsville Mfg. Co., 5 Cir., 203 F.2d 430, 434. So holding, we do not reach the remaining question as to whether respondent refused to bargain with the union.

The petition for enforcement is denied.

2. The Board's decision is reported in 97 N.L.R.B. No. 235.

3. Universal Camera Corp. v. Labor Board, 340 U.S. 474, 490, 71 S.Ct. 456, 95 L.Ed. 456.