**CELANESE CORPORATION OF AMERICA, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 12857.

United States Court of Appeals
Seventh Circuit.

June 16, 1960.

Gerard D. Reilly, Joseph C. Wells, Lawrence T. Zimmerman, Washington, D. C., Everett W. Kramer, New York City, for petitioner, Reilly & Wells, Washington, D. C., of counsel.

Thomas J. McDermott, Associate Gen. Counsel, Melvin J. Welles, Atty., National Labor Relations Board, Washington, D. C., Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Assistant General Counsel, Richard J. Scupi, Attys., National Labor Relations Board, Washington, D. C., for respondent.

Before SCHNACKENBERG and CASTLE, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge.

On petition to review and set aside an order of the National Labor Relations Board and cross-application of the Board for enforcement of said order.

The order in issue requires the Celanese Corporation of America (hereinafter called the "Company") to bargain collectively with the Textile Workers Union of America, AFL-CIO (hereinafter called the "Union"), on behalf of certain of the Company's employees at its Point Pleasant plant, following Board certification of the Union as the employees' majority representative. The Company based its refusal to bargain on the alleged invalidity of the election and cer-

tification arising out of pre-election activities by the Union.

In the election held on March 12, 1958, among the approximately forty-eight employees in the bargaining unit at the Point Pleasant plant, twenty-five votes favored the Union while twenty-two opposed it.

During the pre-election period the Company sent a series of eleven letters, addressed individually to each employee who was involved in the election and signed on behalf of the Company by Paul C. Pearson, Plant Manager, Point Pleasant plant. The first letter, dated February 14, 1958, expressed the Company's view that the employees did not need the Union to speak on their behalf in their relationship with the Company. Subsequent letters in support of this view explained and described Company policies as to employee benefits and working conditions. The Company's final letter, dated March 8, 1958, summarizes the previous correspondence as dealing with policy in respect to job security, working conditions, seniority and promotions, group insurance, vacations, holidays, and job descriptions. It continues to describe changes in the wage program and wage increases since the plant began operations in 1956 and further states that these changes were made through individual progress and "not because a labor organization demanded that they be done."

The Union replied to the Company's communications with two letters, the latter of which, dated March 10, 1958, reads in part as follows:

"Dear Friend:

"The repetitious letters sent to you by the Plant Manager seem to betray an inner sense of guilt. In his letters, Mr. Pearson seems to be taking credit for almost everything but the Declaration of Independence.

"He says that all of the fine fringe benefits show the Company's interest in your concern. This could be something less than the truth, for the fact is that Celanese fringes, as well as other plant conditions, were won through collective bargaining and in many instances over the initial opposition of the Company."

The letter was signed by Morris Riger, Regional Director.

It was stipulated that about twenty copies of this letter were delivered by hand to employees at their homes on the afternoon of March 10, 1958, and that the remainder were deposited in the mail box outside the Point Pleasant Post Office about 6:30 P.M. on March 10, 1958. The Company first saw a copy of this letter about 1:30 P.M. on March 11, 1958. The plant manager testified that a number of employees were not readily available at this time or in the interval before the polls opened at 6:30 A.M. on March 12, 1958.

The Company objects to the election on the ground that the above-quoted portion of the Union's letter contained a material misrepresentation of fact, made within twenty-four hours of the election at a time which did not permit the Company to acquaint the employees of the misrepresentation. A hearing was had on this objection in conjunction with the unfair labor practice proceeding based on the Company's refusal to bargain.

The Trial Examiner held that the challenged letter did not invalidate the election. He concluded that the letter could reasonably be read as a claim by the Union that "some" Celanese fringes were won through collective bargaining when viewed in the light of the Company's previous letters since some of the benefits discussed were of such nature that the employees could not reasonably have believed that the Union was claiming credit for them. Even if the Company's interpretation of this language as reading that "all" Celanese fringes were won through collective bargaining were accepted, the Trial Examiner believed that the Union's claim at most amounted to a "half-truth." He did not make a specific finding as to the truth or falsity of the Union communication. The Board adopted the Trial Examiner's report and

recommendation and issued the order being reviewed here.

This court does not agree with the holding of the Board. The content of the Union's communication to the employees and the manner of its distribution go beyond the bounds of "legitimate propaganda." These activities fall below the standard to be observed in representation elections as set forth by the Board and as approved by the courts. See The Gummed Products Company, 112 N.L.R.B. 1092; The Matter of General Shoe Corp., 77 N.L.R.B. 124; and Kearney & Trecker Corp. v. National Labor Relations Board, 7 Cir., 1954, 210 F.2d 852.

In light of the immediately preceding reference to "all of the fine fringe benefits," the challenged statement cannot reasonably be construed to refer to less than "all" Celanese fringes. If the author had intended to speak of some or several benefits, he would necessarily have had to employ a limiting adjective. The record establishes that some Celanese benefits, as for example the group insurance and retirement pension plans, were initiated and maintained unilaterally by the Company, while other benefits, such as vacations, holidays, pay for jury duty and funeral leave, had been the subject of collective bargaining by the Company and labor organizations at other plants. There had been no union and no negotiations with any union concerning the particular employees involved at the Point Pleasant plant. Apparently the Union is referring to some dealings of the Company and unions at other plants.

The Trial Examiner had concluded that the Company's letters carried the implication that the Company voluntarily granted the benefits discussed in the correspondence without benefit of collective bargaining. The claim in the Company's final letter that certain changes were made because of individual progress rather than as a result of a union demand refers to changes in wages discussed immediately preceding this statement. Clearly, the Company was attempting to convey the impression that the employees were enjoying existing benefits and working conditions without present Union representation at the Point Pleasant plant, while the Union points out that these gains have been derived as a result of prior Union activities. In this context, a claim by the Union that "all" Celanese fringes were the result of collective bargaining is significant and material. Where it has been established that some of the fringes had not thus been obtained, the claim is a misrepresentation of fact, the falsity of which was known to the Union. Characterizing the claim as a "half-truth" does not confer upon it the veracity demanded in respect to material statements made immediately prior to a representation election. Allis-Chalmers Mfg. Co. v. National Labor Relations Board, 7 Cir., 1958, 261 F.2d 613. Nor may a false statement be excused on the ground that it was in answer to prior Company statements carrying possibly erroneous implications. See United Aircraft Corp., 103 N.L.R.B. 102.

The misrepresentation of fact here does not fall within the pre-election publicity "prattle" condoned in Olson Rug Co. v. National Labor Relations Board, 7 Cir., 1958, 260 F.2d 255, where the challenged statements concerned predictions of the future.

The Trial Examiner conceded that the Company did not have sufficient time before the election to reply to the Union's final letter. The election was close; a shift of two out of forty-seven votes cast would have altered the result. Under the facts of this case, it cannot be said that the employees were acting under a correct understanding of the facts with respect to the manner in which employee benefits were gained at the time they cast their ballots. The election must, therefore, be held invalid. See National Labor Relations Board v. Trinity Steel Co., Inc., 5 Cir., 1954, 214 F.2d 120.

This conclusion makes unnecessary a consideration of other objections raised by the Company.

Order set aside and cross-application for enforcement denied.