ANCHOR MANUFACTURING COMPA-
NY, a Division of Basic Products
Corporation, Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 19019.

United States Court of Appeals
Fifth Circuit.

March 30, 1962.

Andrew P. Carter, New Orleans, La.,
Herbert P. Wiedemann, Milwaukee,
Wis., for petitioner.

Dominick L. Manoli, Associate Gen.
Counsel, Marcel Mallet-Prevost, Asst.
Gen. Counsel, Warren M. Davison, Atty.,
Stuart Rothman, Gen. Counsel, Melvin
J. Welles, Atty., N. L. R. B., Washington,
D. C., for respondent.

Before HUTCHESON, CAMERON
and GEWIN, Circuit Judges.

JOSEPH C. HUTCHESON, Jr., Circuit Judge.

The case is before us upon petition of Anchor Manufacturing Company to review and set aside an order of the National Labor Relations Board and answering petition of the Board for enforcement in full. It is another of those increasingly-frequent cases in which an employer has, or thinks he has, objections to the conduct of a representation election and, in order to obtain judicial review of his contention, refuses to bargain with a certified union, thus violating Section 8(a) (5) and (1) of the National Labor Relations Act, 29 U.S. C.A. § 158(a) (1, 5), and causing a Board order directing bargaining upon request to be issued.

The objections of Anchor to the election in this case are directed to campaign propaganda distributed by the Union, which, it is claimed, rendered the election so unfair as to require that it be set aside.

Anchor has two plants, one at Manchester, New Hampshire, and one at Bradenton, Florida. The Union, International Brotherhood of Electrical Workers, AFL–CIO, is the certified bargaining representative at the Manchester plant. The election in controversy was at the Bradenton plant, and was conducted on May 17, 1960.

On April 27, 1960, the Union circulated a handbill among the Bradenton employees, asserting that although the parent organization (Basic Products Corporation) had authorized wage rates as high as $1.50 per hour, the plant manager, who was named, had kept the Bradenton rates at $1.00 per hour and would not raise them beyond $1.15 per hour. The handbill asked why the manager had "cut" wages, and stated "[b]y his selfish act, he had robbed you for his own selfish gain".

On May 16, 1960, the day before the election, the Union circulated another handbill, orginated by the Union at the Manchester plant, which contained this assertion with respect to wage rates at the Manchester plant:

"The lowest pay here is $2.00 an hour (straight time) and goes up to $2.80. Men on Punch Press, for example, make $2.34 on Class A work and $2.23 Class B".

The transmittal letter on the reverse of the handbill, addressed to the Union organizer in Bradenton and signed by the Manchester Union President, stated among other things that when the handbill, which was signed on its face by approximately 123 Union members, had been circulated around the shop "it was enthusiastically signed by all that read it".

Finally, on May 17, 1960, the day of the election, the Union circulated among the employees at Bradenton a telegram from the Union president at Manchester, which stated:

"In response to your request concerning labor difficulties at Anchor Mfg. Co. Manchester NH we wish to emphatically state that relations between company and union has always been at a high point and remains that way anybody that states anything to the contrary is a plain liar there is no labor trouble at this time production for the first four months this year has been one of record production and all things point to a record production year the companys business has more than quadrupled since we employees joined the IBEW in 1949 referring to temporary layoff of nine employees this is strictly temporarily and those laid off should be recalled within four weeks [sic]".

On May 9, 1960, at a meeting of employees at the Bradenton plant, the executive vice-president of Basic Products Corporation, in reply to the Union handbill of April 27th, addressed the employees. Stating that Anchor was paying them what it thought they should be paid and that the company was in Bradenton in the interest of its employees, he also declared that the plant manager, contrary to the implications of the Union handbill, was a truthful and honest man.

The second handbill was distributed in the morning on May 16th. In the afternoon, the company held a one-hour meeting in which a representative of Anchor discussed the handbill with the employees in the unit. He particularly examined the wage rates asserted therein, and produced a copy of the Manchester contract, which he showed to the assembled employees in support of the company's contention that the Union had exaggerated the Manchester rates. In the course of this discussion, the company representative stated that the Manchester plant was experiencing various labor problems and that ten employees had been laid off recently.

■ Anchor argues that "where false statements about the employer's conduct are made by a union prior to a representation election, such statements constitute an interference with the free choice guaranteed to employees by the Act and the election should be set aside.", relying on National Labor Relations Board v. Trinity Steel Co., Inc., 214 F. 2d 120 (5th Cir. 1954), in support of this proposition. In so doing, petitioner reveals a basic misconception of the true principle involved, and of the principle of Trinity Steel, supra. That principle is not that when false statements are made they constitute an interference with free choice, but that *when* false statements are made *which* constitute an interference with free choice, for or against a bargaining representative, an election should be set aside. Thus, the basic issue is whether such false statements as may have been made *in fact* constituted an interference with a free choice of bargaining representatives; it is obvious that every false statement does not. N. L. R. B. v. Trinity Steel Co., Inc., supra; Gummed Products Co., 112 NLRB No. 141, 36 LRRM 1156 (1955); General Shoe Corporation, 77 NLRB No. 18, 21 LRRM 1337 (1948).

When the basis of a challenge to propaganda is, as it is here, that it is false and misleading, the Board does not as a general rule undertake to police or censor the utterances of the parties, absent fraud or coercion. N. L. R. B. v. Dallas City Packing Co., 251 F.2d 663 (5th Cir. 1958); Kawneer Co., 119 NLRB No. 185, 41 LRRM 1333 (1958). However, when a party makes material misrepresentations of fact in circumstances in which employees are unable to evaluate the truth or falsity of the assertions, the Board has held that the legitimate bounds of campaign propaganda have been exceeded and has set aside the election. E. g., Cleveland Trencher Co., 130 NLRB No. 59, 47 LRRM 1371 (1961); The Caldyne Co., 117 NLRB No. 145, 39 LRRM 1364 (1957). As a guide to determining whether employees could evaluate propaganda, the Board considers (1) whether the promulgating party had special knowledge of the facts asserted, thus making it more likely that the employees would rely on them; and (2) whether the challenging party had the opportunity to, or did, rebut the false assertions. Celanese Corporation of America, 121 NLRB No. 42, 42 LRRM 1354 (1958). The burden of proving that the election was unfair is on the objecting party, in this case Anchor. N. L. R. B. v. Huntsville Mfg. Co., 203 F.2d 430 (5th Cir. 1953).

■ We think that petitioner has failed to sustain its burden of establishing the requisite unfairness in the conduct of the election, and that the finding of the Board that the election was fairly conducted, and that petitioner is thus guilty of refusal to bargain, is supported by substantial evidence on the record taken as a whole. Universal Camera Corporation v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1952).

■ With regard to the Union handbill of April 27th, aside from the bare assertion that its statements were false, petitioner has offered no evidence to show that they were, and the Board was thus correct in refusing to determine whether they were or were not. N. L. R. B. v. O. K. Van Storage Inc., 297 F.2d 74 (5th Cir., 1961). Taking the statements as false, however, the employees would have no reason to believe that the Union had special knowledge of the facts

**304**

asserted, and the company had the opportunity to and did rebut the assertions. The Board was justified in determining that this handbill did not interfere with the free exercise of the employees' votes.

■ The handbill relating the wage rates at the Manchester plant cannot properly be said to be false and misleading. The wage structure at the Manchester plant is rather complicated, and, without going into the details, it is sufficient to say that the wage rates represented were actually being paid to some employees. The form of presentation was not in and of itself misleading; in fact, the figures presented were, in all probability, those about which most potential Union members would be interested: the minimum and maximum rates for workers who had been on the job for over 120 days. We are unconvinced that these employees were interested only in the beginning or hiring rates, or that they were deceived by the rates stated. Even had the statements been false, however, it is clear that the employees had no reason to believe that the Union had greater knowledge of the facts than the company, which again had the opportunity to and did rebut the Union assertions, for on the same day a meeting of the employees was held, and with a copy of the Manchester contract in his hand, a company representative explained the company's version of the facts. The rejection by the Board of this ground of objection was supported by substantial evidence.

■ Anchor purports to have information that several of the numerous signers of the handbill were less than enthusiastic about signing it, and maintains that the statement in the transmittal letter that "the handbill was enthusiastically signed by all that read it" was therefore false, misleading, and a ground for invalidation of the election. With respect to this insubstantial objection, the Board properly concluded that whether the statement was true or false, its utterance did not reasonably tend to interfere with the voter's free choice.

■ The last objection of the company is to the following statement in the telegram circulated on the day of the election: "referring to temporary layoff of nine employees this is strictly temporarily [sic] and those laid off should be recalled within four weeks". Asserting that this statement was calculated to and did create a false picture of the company's economic condition, Anchor has offered proof that more than nine employees were in fact laid off, and hearsay evidence that the Union official responsible for the telegram had no reason to believe that the layoff was only temporary. The company is in no position to complain about this statement, however, as it was made in response to the statement of the company representative that the New Hampshire plant was experiencing various labor difficulties (the telegram began: "In response to your request concerning labor difficulties at * * * Manchester * * *") and that ten employees (not seventeen, as Anchor now claims) had been laid off. The impression which the telegram attempted to convey was the opposite of that attempted by the company; namely, that labor-management relations were cordial and that job-security was not prejudiced by those lay-offs which had occurred. The difference in number of employees alleged by the company and by the Union to have been laid off, only one, was not, we think, sufficient to constitute an inhibition of the employees' free choice; nor was the statement that the layoff was temporary and that the laid off employees *should be* recalled within four weeks". The latter was obviously the expression of an opinion, not an assertion that the employees would definitely be recalled within that time, and a "layoff" is by definition temporary. The matters referred to were not within the special knowledge of the Union, and since the telegram was itself a response to assertions of the company, no opportunity for further rebuttal by the latter was required; the positions of both company and the Union had been made known to the employees.

The findings and conclusions of the Board having support in substantial evidence on the record considered as a whole, the petition of Anchor Manufacturing Company will be denied and the Board order enforced as written.

Order enforced.