**HOME TOWN FOODS, INC. d/b/a Foremost Dairies of the South, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 23912.

United States Court of Appeals Fifth Circuit.

June 26, 1967.

John Bacheller, Jr., Fisher & Phillips, Atlanta, Ga., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Robert S. Hillman, Atty., N. L. R. B., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Glen M. Bendixsen, Atty., N. L. R. B., Washington, D. C., for respondent.

Before COLEMAN and AINSWORTH, Circuit Judges, and CARSWELL, District Judge.

COLEMAN, Circuit Judge.

Home Town Foods, Inc., seeks review of an NLRB order, asking that the order be set aside or, alternatively, that the case be remanded for a hearing. The Board cross petitions for enforcement. In the existing status of the case we deny enforcement and remand for a hearing.

Home Town Foods, doing business as Foremost Dairies of the South, manufactures ice cream at its Sylacauga, Alabama, plant. On April 8, 1965, the union filed a petition for certification as bargaining agent of all production, shipping, driver-salesman and transport employees

at the plant.[1]  After a hearing the Regional Director designated a bargaining unit, decided certain disputed classifications, and reserved decision on others. A representation election was scheduled for July 29, 1965 at the employer's snack bar.[2]  The election resulted in fifty-two valid votes for the union, forty-five against it, and nine challenged ballots.[3]

The employer filed detailed objections to union conduct allegedly affecting the election results and furnishing numerous employee affidavits in support of its contentions.  The Regional Director conducted an ex parte investigation of these charges.  The content of the employee statements has never been fully disclosed, although references to them are made in conclusory form in the Regional Director's decision.  The employer was not permitted to be present when the statements were taken.

Ten days before the Regional Director released his decision pursuant to the ex parte investigation, the employer's attorney wrote the Regional Director requesting a hearing [4] in the event the Director's office considered the evidence insufficient to sustain the employer's objections.  The employer states he received no answer to this request.

The Regional Director's decision overruled all objections on the ground they did not raise material or substantial issues affecting the results of the election, and certified the union.  The employer's request for Board review of the decision was summarily denied, as was a request to reconsider.  Contesting the validity of certification, the employer refused to bargain.  Charges were filed by the union, and a complaint issued alleging violations of §§ 8(a) (1) and 8(a) (5) of the National Labor Relations Act.  The employer's answer denied the validity of the certification and asserted violations of Board rules and of due process.

At the hearing on the refusal to bargain charges, the Trial Examiner refused to consider the merits of the employer's evidence on validity of the election and certification.  He did, however, allow the affidavits previously furnished the Regional Director in the representation case to be placed in the record.  The Examiner ruled the refusal to bargain was unlawful and ordered bargaining.  The Board affirmed.  Hence the case reached us.

■  Where a party seeks to overturn the result of an election, the burden is on him to show that the election was unfairly conducted.  NLRB v. Mattison Mach. Works, 1961, 365 U.S. 123, 81 S.Ct. 434, 5 L.Ed.2d 455; NLRB v. Huntsville Mfg. Co., 5 Cir., 1953, 203 F.2d 430.  On this record we do not feel warranted in declaring the election invalid.  We thoroughly realize, however, that the employer, without the aid of a hearing in which its objections could have been aired, has faced a most difficult task in carrying its burden.

■  The Act provides only for preelection hearings.  Board rules, however, require an investigation when post-election objections are filed.  If substantial and material factual issues exist, they can be resolved only after a hearing. 29 C.F.R. § 102.69(c).  Specifically, the objector must supply the Board with evidence which prima facie would warrant setting aside the election.  United States Rubber Co. v. NLRB, 5 Cir., 1967, 373

1. Retail, Wholesale & Department Store Union AFL–CIO.

2. In a supplemental decision on objections to the election, the Regional Director states this polling place was chosen by the employer.  The employer contends the snack bar was agreed to only after its first two suggestions were rejected by the Regional Director's office.  This contention is not disputed.

3. Seven of the challenged ballots were rejected by the Regional Director on the ground that the voters were not employees on the eligibility date.  The remaining two challenges, based on objections by the union, were left unresolved on the ground that they could not be determinative.

4. As provided in NLRB Rules & Regs. § 102.69, 29 C.F.R. § 102.69.

F.2d 602, 606; NLRB v. Douglas Co. Elec. Membership Corp., 5 Cir., 1966, 358 F.2d 125, 129. " * * * [S]pecific evidence of specific events from or about specific people * * * " is necessary. Douglas Co. Elec. Membership Corp., supra at 130.

The employer's objections to the election, filed in the certification proceedings, alleged six specific acts of the union or union supporters which were claimed to vitiate the election and certification. Specific persons were described by role, and the union's chief agent was named. The objections alleged union tactics of terror and coercion. Threats of physical harm to opponents of the union, rumors of loss of jobs, actual equipment sabotage, and other acts of violence were laid to union proponents and to members of a union then on strike from another plant. The Regional Director made no findings on the truth of these allegations. Instead he concluded that even if they were true, coming as they did from rank-and-file employees, the union could not be held responsible.

The affidavits introduced by the employer in the refusal-to-bargain proceedings told the following story about the conduct of the election:

The snack bar at the employer's plant, where the election was held, is totally open to public view, being a crescent-shaped, glass-enclosed room near the street. During the polling, former employees and other persons sat in parked cars visible from the snack bar. One of them carried a small sign reading "Vote Yes".

During the voting, several of the striking employees from a nearby plant, who had allegedly threatened Foremost employees, congregated in front of the snack bar and observed the voting through the glass walls. Six laid-off employees, known by the other employees to be adamant union adherents (indeed, some of them had threatened voters who were then in the snack bar) were invited inside by the Board agent (who knew at least one of them) and allowed to stand within three feet of the open end of the voting booth while the voting proceeded. These men talked among themselves and gestured to the waiting voters. Two voters understood these gestures to be demands that they vote for the union.

It was necessary for each voter to walk past the laid-off employees to reach the voting booth. Once inside, the voter was faced with a curtain which did not completely shield him from the laid-off employees three feet away. It could be seen from outside the booth, it is charged, how ballots were marked. Several voters stated they felt compelled to vote for the union in view of all the circumstances, one said he voted for it solely because he believed his ballot was being observed, and many complained they were uncomfortable, nervous and under pressure while voting.[5]

While voting progressed the union's chief agent twice drove slowly by on the street outside the snack bar, looking at the election area. A pro-union supervisor who was obviously not entitled to vote was allowed to remain inside the snack bar while twenty other people did vote.

The Regional Director's opinion, released after his administrative investigation, failed to comment on some of the facts alleged in the employer's affidavits. It did not consider the effect of the proceedings at the polling place on the minds of the voters. An excuse the chief agent for the union gave for his presence near the polling place was apparently accepted at face value.

---

5. In light of these statements in the affidavits, it is difficult indeed to understand the conclusion of the Regional Director after his ex parte investigation that " * * * there is no evidence that the secrecy of any voter's ballot was destroyed". In view of the disposition we make of the case, it is unnecessary to determine whether the Board failed in the duty imposed on it by § 9(e) (1) of the Act to "take a *secret* ballot" of the employees (emphasis added).

244

The Regional Director took each of the employer's objections separately, and concluded that none of them would suffice to overthrow the election. It is not the effect of any one of the objectionable acts standing alone, however, but the combined effect of all of them, which must be considered. NLRB v. Trancoa Chem. Corp., 1 Cir., 1962, 303 F.2d 456, 461, 3 A.L.R.2d 879.

Viewed cumulatively, we have no doubt that the employer's objections charge that the election was conducted in less than the laboratory conditions so often promised by the Board and required by the Courts. We are also of the opinion that substantial and material factual issues exist which make it necessary that the employer be given a hearing and an opportunity to establish his charges, including cross examination of the witnesses for the union. One of the important issues is the effect of the election and pre-election practices of union supporters on the minds of the voters. The Courts have usually applied an objective test to determine whether interference with an election is sufficient to set it aside. See NLRB v. Trancoa Chem. Corp., 1 Cir., 1962, 303 F.2d 456, 461, 3 A.L.R.2d 879; NLRB v. Trinity Steel Co., 5 Cir., 1954, 214 F.2d 120, 123. Subjective evidence of fear and coercion, however, may carry the day as well. NLRB v. Tampa Crown Distribs., 5 Cir., 1959, 272 F.2d 470.

We are not impressed with the argument that all coercive acts must be shown to be attributable to the union itself, rather than to the rank and file of its supporters. As the Board has once said, "The important fact is that such conditions existed and that a free election is hereby rendered impossible". Diamond State Poultry Co., 1953, 107 N.L.R.B. 3, 6.

Enforcement of the order to bargain will be denied, and the case is remanded for a full hearing as to the validity of the election and certification.