AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO, LOCAL 1959, AN UNINCORPORATED ASSOCIATION, APPELLANT, v. PUBLIC EMPLOYMENT RELATIONS COMMISSION, CITY OF JERSEY CITY, A MUNICIPAL CORPORATION, AND JERSEY CITY PUBLIC WORKS EMPLOYEES, INC., LOCAL 245, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 27, 1971—Decided May 4, 1971.

Before Judges KILKENNY, HALPERN and LANE.

*Mr. Abraham L. Friedman* argued the cause for appellant (*Messrs. Rothbard, Harris & Oxfeld,* attorneys; *Mr. Emil Oxfeld and Mr. Friedman,* of counsel).

*Mr. Theodore A. Winard,* Deputy Attorney General, argued the cause for respondent Public Employment Relations Commission (*Mr. George F. Kugler, Jr.,* Attorney General, attorney; *Mr. Winard,* of counsel, submitted statement in lieu of brief).

No brief was filed on behalf of respondent, Jersey City Public Works Employees, Inc., Local 245.

The opinion of the court was delivered by

LANE, J. A. D. American Federation of State, County and Municipal Employees, AFL-CIO, Local 1959 (Local 1959) appeals from a Supplemental Decision and Certification of Representative by the Public Employment Relations Commission (PERC).

As a result of petitions filed for certification of representative of certain employees of the Department of Public Works of the City of Jersey City, an election was held May 15, 1969 at the direction of PERC. PERC set aside the election upon objections filed by Local 245. A rerun election was held December 4, 1969 as a result of which the majority of votes were cast for Local 245. This appeal is from the Supplemental Decision of PERC overruling Local 1959's objections to the rerun election.

The objections filed were:

(1) At the pre-election conference sponsored by the American Arbitration Association, the rules and procedures for conducting the election were worked out by mutual consent of all parties. One such item of agreement was that there would be no electioneering within 100 feet of the polling place. This rule was flagrantly and almost continuously violated by officers of Local 245 during the entire polling period. (between 7:30 A.M. and 5:00 P.M.).

(2) In the garage next to the voting room, and connected by an open doorway, officers of and others representing Local 245 freely and openly dispensed alcoholic beverages to eligible voters before and after entering the polling place, as an inducement for votes.

(3) The President of Local 245, Mr. Thomas DeCarlo was afforded special privileges by the employer in that he was permitted to park his personal automobile in the D.P.W. garage within 10 feet of the doorway to the polling area. From time to time he and others representing Local 245 got in and out of his car and during most of the remainder of voting hours they stood in groups between Mr. DeCarlo's car and the doorway to the voting room. By contrast, representatives of and supporters of Local 1959 were required by representatives of the employer to remove their cars which were parked outside at the curb across the street from the building where the voting was taking place.

By these and other acts representatives of Local 245 did engage in conduct which improperly affected the outcome of the above election. The Commission is therefore urged to set aside the above election and reschedule another, taking whatever steps as are appropriate in order to assure that the new election will be conclusive.

The Hearing Officer recommended that Objections 1 and 2 be sustained, Objection 3 be overruled and a third election be directed. The basis of his recommendation for sustaining Objection 1 was stated:

> Though there is a temptation to say a plague upon both your houses or to say that conduct by one countervails the conduct of the other, I cannot make such a recommendation. The election process is too important a matter for compromise. There must be conduct that does *not* affect the results of the election. There must be stringent standards.

The basis of his recommendation for sustaining Objection 2 was his belief "that the highest of all standards should be promulgated and maintained. Again, the election process, the heart of Chapter 303 Laws of 1968, must be beyond compromise."

Local 245 filed objections to the hearing officer's report and recommendation. PERC overruled the hearing officer as to the objections that had been filed by Local 1959 to the conduct of the election, stating as to:

> Objection No. 1 — As more fully set forth in his Report, the Hearing Officer found that the parties agreed to refrain from electioneering within a 100 feet radius of the polling place, that Petitioner's President DeCarlo parked his car for a time within the restricted area, that this car bore Petitioner's campaign stickers, that DeCarlo and his supporters congregated for a time within the restricted area, moved away but later returned and were joined by Intervenor's representative and his adherents. The Commission does not agree that this conduct is sufficient to warrant setting aside the election. To hold that the act of entry within the restricted area is, without more, a valid objection, would reduce the issue of an election's legitimacy to a rather mechanical exercise, emphasizing form over substance. In this case the record discloses that representatives and adherents of both organizations did enter within 100 feet of the polling place, but the record fails to disclose that these individuals, once present, engaged in electioneering. Though not a preferred condition, their mere presence is not, *per se*, electioneering and does not necessarily establish interference with the election process or the voters' freedom of choice. Concerning DeCarlo's car and its display of campaign stickers, the record shows that it was parked in the restricted area for a period of time, the duration of which the objecting party and the record as a whole fails to establish, the car was promptly removed when objection was raised, and was moved to a location where the stickers were no longer visible; at least, there is no evidence that voters saw such. Intervenor's representative Klingensmith states he saw no stickers after the car was removed. Under all the circumstances the Commission concludes the conduct described does not constitute interference. Accordingly Objection No. 1 is overruled.

Objection No. 2 — The Commission adopts the Hearing Officer's findings of fact concerning Intervenor's Objection No. 2. However, the record is barren of any testimony not only that any voters were inebriated but also that voters were given alcoholic beverages as an inducement or reward for voting for Local 245. Mr. Klingensmith and Mr. Nardolilli testified that they were offered drinks by Petitioner's representatives. But neither of these two men were eligible to vote. The fact that people were drinking in a garage near a polling place is no basis for setting this election aside absent proof that the dispensing of alcoholic beverages interfered with the voters' ability to cast their ballots freely without inducement or reward. Moreover, the record fails to establish how many of these "people" were employees on their way to vote. The Commission in no way condones dispensing of alcoholic beverages to voters during an election. However, the Commission must examine the record carefully to determine if the drinking interfered with the voting. In the instant case the Commission finds insufficient evidence of interference with orderly voting due to drinking or dispensing of alcoholic beverages.

For the foregoing reasons, the Commission overrules Intervenor's Objection No. 2.

PERC's standard for its review of the conduct of elections was stated in its decision as follows:

The Commission presumes that an election conducted under its supervision is a valid expression of employee choice unless there is evidence of conduct which interfered or reasonably tended to interfere with the employee's freedom of choice. Conduct, seemingly objectionable, which does not establish interference, or the reasonable tendency thereto, is not a sufficient basis to invalidate an election. The foregoing rule requires that there must be a direct relationship between the improper activities and the interference with freedom of choice, established by a preponderance of the evidence.

Simply stated, the position of Local 1959 is that there having been an agreement not to electioneer within 100 feet of the polling place, any violation of that agreement without more is sufficient to taint the election. Its position is similar with regard to the dispensing of alcoholic beverages by Local 245. It urges the adoption of a policy for the review of contested elections based upon an objective standard.

N. J. S. A. 34:13A–6(d) empowers the Commission to resolve questions concerning representation "by conducting a secret ballot election or utilizing any other appropriate and

suitable method designed to ascertain the free choice of the employees." There is no additional legislative direction insofar as elections are concerned.

The Rules and Regulations of the Commission contain no specific rules governing the holding of the election. Rule 19:11–19 merely provides that the election shall be by secret ballot. Rule 19:11–19(f) allows any party to file objections to the conduct of an election within five days after the tally of ballots.

We turn for guidance to cases decided under the National Labor Relations Act. In *N. L. R. B. v. Golden Age Beverage Company*, 415 *F.* 2d 26 (5 Cir. 1969), the court stated:

Certain well established principles guide this inquiry. Most important is the wide discretion Congress has entrusted to the Board in its conduct and supervision of elections, *N. L. R. B. v. Huntsville Manufacturing Co.*, 203 *F.* 2d 430, 434 (5th Cir. 1953), and the considerable weight which must therefore be accorded the Board's findings, with judicial review narrowly limited to ascertaining only their reasonableness. *N. L. R. B. v. Laney & Duke Storage Warehouse Co.*, 369 *F.* 2d 859, 864 (5th Cir. 1966). As this Court said in *Pepperell Manufacturing Co. v. N. L. R. B.*, 403 *F.* 2d 520 (5th Cir. 1968), *cert.* denied, 395 *U. S.* 922, 89 *S. Ct.* 1774, 23 *L. Ed.* 2d 238 (May 26, 1969), "Determination whether union representation election was fairly or unfairly conducted and should be set aside is primarily for the National Labor Relations Board. Thus, the only question presented to the Courts in an election review is whether the Board has reasonably exercised its discretion." 403 *F.* 2d at 522, citing *Neuhoff Brothers, Packers, Inc. v. N. L. R. B.*, 362 *F.* 2d 611 (5th Cir. 1967). Because it is for the Board to decide if the conduct charged reasonably tends to interfere with the employees' free choice, *N. L. R. B. v. Dallas City Packing Co.*, 251 *F.* 2d 663 (5th Cir. 1958), this Court, in reviewing this decision, "must be slow to overrule a discretionary determination by the Board." *Neuhoff Brothers, Packers, Inc. v. N. L. R. B.*, *supra*, 362 *F.* 2d at 616. Whether this Court would reach the same conclusion as the Board from the conflicting evidence is immaterial, so long as the Board's finding that the election was fairly conducted is supported by substantial evidence in the record considered as a whole. *N. L. R. B. v. Waterman Steamship Corp.*, 309 *U. S.* 206, 226, 60 *S. Ct.* 493, 496, 84 *L. Ed.* 704, 716 (1940) ; *Universal Camera Corporation v. N. L. R. B.*, 340 *U. S.* 474, 477, 71 *S. Ct.* 456, 459, 95 *L. Ed.* 456, 462 (1951) ; *Anchor Manufacturing Company v. N. L. R. B.*, 300 *F.* 2d 301, 303 (5th Cir. 1962).

Further, in reviewing the Board's disposition of the Company's objections to the election, it "must be kept in mind that the burden is on the party objecting to the conduct of the representation election to prove that there has been prejudice to the fairness of the election." *Southwestern Portland Cement Co. v. N. L. R. B.*, 407 *F. 2d* 131, 134 (5th Cir. 1969), pet. cert. filed, 37 *U. S. L. W.* 3444 (May 14, 1969). *See also N. L. R. B. v. Ortronix, Inc.*, 380 *F. 2d* 737, 740 (5th Cir. 1967); *N. L. R. B. v. O. K. Van Storage, Inc.*, 297 *F. 2d* 74, 75 (5th Cir. 1961). This is a heavy burden; it is not met by proof of mere misrepresentations of physical threats. Rather, specific evidence is required, showing not only that the unlawful acts occurred, but also that they interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election. *Cf. Southwestern Portland Cement Co. v. N. L. R. B.*, *supra* 407 *F. 2d* at 134; *Anchor Manufacturing Co. v. N. L. R. B.*, *supra* 300 *F. 2d* at 303. [415 *F. 2d* at 29–30]

See also, *Bush Hog, Inc. v. N. L. R. B.*, 420 *F.* 2d 1266 (5 Cir. 1969); *Southwestern Portland Cement Company v. N. L. R. B.*, 407 *F.* 2d 131 (5 Cir. 1969), *cert.* den. 396 *U. S.* 820, 90 *S. Ct.* 59, 24 *L. Ed.* 2d 71 (1969); *Home Town Foods, Inc. v. N. L. R. B.*, 379 *F.* 2d 241 (5 Cir. 1967), and *N. L. R. B. v. Laney & Duke Storage Warehouse Co.*, 369 *F.* 2d 859 (5 Cir. 1966).

It appears that the National Labor Relations Board will set aside an election where there is a breach of its rule against electioneering at or near the polls where the electioneering is "sufficient to warrant the inference that it interfered with the free choice of the voters." *Star Expansion Industries Corporation and Local 1968, International Brotherhood of Electrical Workers AFL-CIO*, 1968–1 *CCH NLRB* ¶ 22,243. See also, *N. L. R. B. v. Union Carbide Caribe Inc.*, 423 *F.* 2d 231 (1 Cir. 1970).

The ultimate test under the National Labor Relations Act appears to be whether the election was fair. The resolution of that question is left to the National Labor Relations Board. *National Labor Relations Board v. Mattison Machine Works*, 365 *U. S.* 123, 81 *S. Ct.* 434, 5 *L. Ed.* 2d 455 (1961).

██ The Legislature has left to PERC the resolution of questions concerning representation, including the manner

in which elections are to be held. The Commission has by its decision in this case adopted a policy based upon a subjective standard; namely, that elections will not be set aside unless the objector carries the burden of proving that there was conduct which interfered with or which reasonably tended to interfere with the employees' freedom of choice. The decision of the Commission to adopt this policy is not arbitrary or capricious and will not be disturbed by us. *Thomas v. Board of Education, Morris Tp.,* 89 *N. J. Super.* 327 (App. Div. 1965), aff'd 46 *N. J.* 581 (1966).

■ There is substantial credible evidence in the record to support the decision of the Commission under the policy which it has adopted. *Atkinson v. Parsekian,* 37 *N. J.* 143 (1962).

Local 1959's argument that the Commission violated its own rules by disposing of the objections to the hearing officer's report directly rather than by having it first dealt with by the executive director is without substance.

The Supplemental Decision and Certification of Representative of the Public Employment Relations Commission is affirmed.