**TEXAS PIPE LINE COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD,** Respondent.

No. 18703.

United States Court of Appeals
Fifth Circuit.

Nov. 30, 1961.

Oliver J. Butler, Jr., Houston, Tex., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Dominick L. Manoli, Assoc. Gen. Counsel, N. L. R. B., Julius G. Getman, Atty., N. L. R. B., Washington, D. C., Stuart Rothman, General Counsel, Melvin J. Welles, Attorneys, National Labor Relations Board, Washington, D. C., for respondent.

Before HUTCHESON, RIVES, and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

This dispute grows out of a National Labor Relations Board determination in December 1959 that three of petitioner's seven divisions constitute an appropriate bargaining unit. The petitioner, Texas Pipe Line Co., contesting the validity of that determination, refused to bargain with the Union.[1] As a result, the N.L.R.B. found that the Company had engaged in unfair labor practices under Sections 8(a) (1) and (5) of the National Labor Relations Act, 29 U.S.C.A. § 158 (a) (1) and (5). Texas Pipe Line petitions this Court to review and set aside the Board's usual order requiring the Company to cease and desist from its refusal to bargain and from violating the employees rights "in any like or related manner"; the Board petitions for enforcement. We uphold the N.L.R.B. ruling that the three divisions constitute an appropriate bargaining unit and grant enforcement of the order.

Texas Pipe Line is a wholly owned subsidiary of Texaco Inc. It operates pipe lines for the transportation of petroleum products in Texas, Louisiana, New Mexico, Oklahoma, Montana, Illinois, and Indiana. These operations are organized into seven divisions: Wichita Falls in North Texas and Oklahoma, Houston in South Texas, and Lafayette in East Texas and Louisiana; Hearne in Central Texas, and Evangeline in East Texas and Louisiana; Montana in Montana; and Salem in Illinois and Indiana. Before 1959 each division was a separate bargaining unit, as directed by the N.L.R.B. in several previous representation proceedings dating back to the early and middle 1940s. The employees are unionized in four of the seven divisions. The Oil, Chemical and Atomic Workers International Union formerly represented the employees in petitioner's Lafayette, Wichita Falls, and Montana divisions, and the Union's Local No. 4–367 was the representative for the Houston division.[2] There is no history of bargaining at the Hearne, Evangeline, or Salem divisions. In March 1959 the Union requested that the N.L.R.B. direct a representation election in a Company-wide unit consisting of all operating and maintenance employees of Texas Pipe Line. At a representation hearing in May the Company contended that the appropriate bargaining unit should comprise a single division only; the Union argued for a Company-wide unit or, alternatively, a unit covering the Wichita Falls, Houston, and Lafayette divisions. The trial examiner recommended, and the Board adopted, the Union's alternate proposal for the three-division unit. The Board explained its ruling as follows:

"We view the Union's alternative position as an effort to consolidate

1. The refusal to bargain in a bargaining unit established by allegedly invalid N. L. R. B. proceedings is an appropriate manner, if not the only available manner, to obtain judicial review of the N. L. R. B. determination. Pittsburgh Plate Glass Co. v. N. L. R. B., 1941, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251; Phillips Petroleum Co. v. N. L. R. B., 5 Cir., 1953, 206 F.2d 26.

2. The representation in these divisions was disputed by the parties below, and the matter was not definitely settled; see the discussion of this question, *infra*.

the units which it has represented severally into a single bargaining unit. The geographical remoteness of the Montana and Salem Divisions persuades us that they may not properly be included in a single unit with the Texas and Louisiana operations of the Employer.

"Employees of the Hearne and Evangeline Divisions have not been represented by the Union. It is contrary to Board policy to add previously unrepresented groups to presently represented units without a self-determination election. We will not direct an election among the employees of the Hearne and Evangeline Divisions however, because the Union has made no showing of interest among them. We find it unnecessary, therefore, to determine whether the employees of the Hearne and Evangeline Divisions properly may be included in a larger unit. The petition, insofar as it relates to these employees is hereby dismissed, without prejudice to a new petition supported by a proper showing of interest.

"The remainder of the Employer's operation consists of three integrated and adjoining crude oil divisions—the Witchita Falls and Houston Divisions in Texas and the Lafayette Division in Louisiana. These divisions are engaged in substantially identical operations. Their employees are represented by the same local of the petitioning Union. Working conditions, job classifications and employee benefits in the three divisions are similar and there has been some interchange of personnel among these divisions. We find, accordingly, that the employees of the Wichita Falls, Houston and Lafayette Divisions constitute an appropriate unit."

■ Judicial review of a Board determination of an appropriate bargaining unit is narrowly limited. Section 9(b) of the National Labor Relations Act, 29 U.S.C.A. § 159(b), places primary authority over these questions in the Board, which must consider a variety of factors in reaching its decision. These include the similarity of working conditions and duties, the character of the various plants, the wishes of the employees, and the anticipated effectiveness of the unit in maintaining industrial peace through collective bargaining. Pittsburgh Plate Glass Co. v. N. L. R. B., 1941, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251. "The issue as to what unit is appropriate for bargaining is one for which no absolute rule of law is laid down by statute, and none should be by decision. It involves of necessity a large measure of informed discretion and the decision of the Board, if not final, is rarely to be disturbed." N. L. R. B. v. Packard Motor Car Co., 330 U.S. 485, 491, 67 S.Ct. 789, 793, 91 L.Ed. 1040.

■■ Texas Pipe Line argues that the three-division bargaining suit is a heterogeneous unit unrelated to its administrative or operational structure; that the three divisions bear no similarity toward each other as compared with the other divisions.[3] This is a two-pronged contention: first, that there is no adequate basis for placing its separate divisions in a combined bargaining unit; second, that if such divisions may be combined, the exclusion of four of the divisions is so arbitrary and unreasonable that the chosen grouping should not stand.

### I.

First, Texas Pipe Line challenges the Board statement that the three divisions

---

3. The Company also contends that the N. L. R. B. is bound by its statements that it will not change established bargaining units unless changes in underlying circumstances have occurred. We find no statutory or other authority to support such a proposition. While permanence of bargaining units is an objective to be promoted, it would not be sound policy to chain the Board to its past determinations. It is preferable to leave the Board free to use the benefit of experience to correct past mistakes or make alterations which appear desirable.

are "integrated and adjacent." We do not read this finding as disregarding the Company's divisional organization. It refers to the fact, as stated in the testimony of the Company's employees and officers, that the pipe lines operated by the various divisions interconnect and oil flows from the pipes of one division to those of another. The divisions are therefore functionally integrated, at least to a limited degree. The fact that the geographical areas encompassed by the three divisions are contiguous, Lafayette to Houston, and Houston to Wichita Falls, supports the finding that the divisions are "adjacent."

The finding that the divisions engage in substantially identical operations cannot be disputed and strongly supports the combination into a single unit. The sole objection that Texas Pipe Line makes to this finding is that its Lafayette division operates certain water stations where it is necessary for the workers to travel twenty or thirty minutes by boat to get to the job. These water operations are not conducted by any other divisions, and differ from the operations carried on elsewhere, requiring special agreements covering travel time and other matters. But, as the Board points out, these water operations comprise only a part of the operations of the Lafayette division itself, and that division has been treated as a single bargaining unit for many years without difficulty or objection by the Company. The combination therefore will not change the fact that one unit comprises workers in both water and regular land operations.

■ Texas Pipe Line disputes the Board's statement that the same local represents the employees of all three divisions. The statement is not precise, but it contains no significant error. The petitioner acknowledges that Local 4–367 represents the employees in the Houston division, but it asserts that the International Union itself, not the local unit, has represented the employees of the Lafayette and Wichita Falls divisions. John E. Crossland, Secretary-Treasurer of Local 4–367, testified that the local had represented the employees of the Lafayette division and of one of three divisions which in 1957 were merged to form the Wichita Falls division. On cross-examination he stated that the Houston division was the only one for which the local had been certified, and he acknowledged that he had acted as a representative of the International Union, in negotiations in the other two divisions. Apparently, jurisdiction over those divisions was retained by the International Union, but the distinction between the local unit and the international unit seems unimportant for these purposes, especially where there has been a practice of having the officers of the local act for the international. We conclude, therefore, that this point does not materially affect the Board determination.

The Board found that "working conditions, job classifications, and employee benefits in the three divisions are similar." The Company readily concedes the point that the job classifications are similar but contests its relevance. We agree with the Board that this is a significant factor, since the presence of substantial numbers of pipelines or gaugers in all three divisions indicates that the employees share a community of interest. That all three divisions operate oil pipelines suggests that their employees perform substantially similar jobs and duties, as distinguished from the employees of other industries. The concurrence of similar job classifications bears this out. Texas Pipe Line relies on the unique features of the Lafayette water boat operations to demonstrate a dissimilarity of working conditions, but as we have already indicated any differences created by the water boat operations already exist within the Lafayette division and will cause no additional problems in the combined unit. As to employee benefits, substantial evidence indicates that the contracts covering all three divisions are nearly the same. With minor variations, the terms are identical, or nearly so, covering wages, overtime pay, per diem allowances, layoffs, holidays, and vacations, accident and sickness plans, pensions,

group life insurance, and other matters. On this point the record strongly supports the Board findings.

The Board also found that "there has been some interchange of personnel" among the three divisions. The Company contests this point, but there is undisputed testimony that on several occasions employees from one division have been sent as inspectors to other divisions.

Texas Pipe Line contends that the three divisions are autonomous and that each handles its own labor relations and negotiations. As conceived, the theoretical independence of each division is in accord with the Company's position. The evidence indicates, however, that in practice the Company exercises considerable authority over labor matters in the divisions. For example, it maintains a central Personnel and Industrial Relations staff at Houston. John E. Crossland, who represented the union at various negotiations in all three divisions over a period of several years, testified that there "were only rare instances when there wasn't at least one person out of the Houston office, regardless of whether it was a grievance, negotiations or arbitrations." W. C. Martin, another union officer with experience in these divisions, said that the demands made by the Company in contract negotiations "were very similar, if not identical, in all three divisions."

In Pittsburgh Plate Glass Co. v. N. L. R. B., 1941, 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251, the Supreme Court upheld an N.L.R.B. finding that separate plants should be combined into a single bargaining unit under roughly analogous circumstances. The Court stated:

"It is true the record shows a substantial degree of local autonomy. Crystal City is a separate industrial unit, not one mechanically integrated into the division. The local superintendent deals with labor grievances, the plant has its own purchasing agent and there is no exchange of employees. On the other hand, labor policies and wages come from the central office in Pittsburgh, there is great similarity in the class of work done. Wages, hours, working conditions, manufacturing processes differ only slightly among the plants." 313 U.S. at 164.

In a case such as this, when the Board must weigh a number of conflicting factors and when it is manifest that the Board has made a careful study of the facts and made findings supportable by the record, we cannot say that the Board has abused its discretion—even if we should disagree with some of its conclusions. Here, it was not unreasonable for the Board to decide that the three divisions should be combined into a single bargaining unit.

## II.

Texas Pipe Line contends that the Board's exclusion of the Salem, Montana, Evangeline, and Hearne divisions from the combined bargaining unit is arbitrary and unreasonable. In a sense, the petitioner ought not complain of the exclusion since it operates as a compromise of its position that the individual divisions represent more appropriate bargaining units. The Company argues, however, that the absence of justification for according different treatment to the excluded divisions demonstrates the unreasonableness of the decision to combine the three divisions. The strength of Texas Pipe Line's initial argument that the divisions are the appropriate units works here to its disadvantage: it points up the fact that these are close questions. Inevitably they must be determined by shifting, marginal considerations.

The Salem and Montana divisions were excluded because of their geographical remoteness. The distance between these divisions and the three selected divisions would certainly create certain difficulties in the administration of union affairs. It is more than likely that the same union officials would have difficulty handling matters over such wide areas. The regional differences might also create different attitudes and interests in the employees which would impede the functioning of a single bargaining representative. Courts have relied on geographical sepa-

ration as a significant factor in several cases where the distances involved were only a limited number of miles. N. L. R. B. v. Stewart, 5 Cir., 1953, 207 F.2d 8, 10; N. L. R. B. v. Local 404, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, 1 Cir., 1953, 205 F.2d 99, 103; N. L. R. B. v. Prudential Ins. Co., 6 Cir., 1946, 154 F.2d 385, 388. Where the areas are separated by half the country, as North Texas and Oklahoma are from Montana and from Indiana and Illinois, there certainly is sound reason, especially in a close case to refuse to include groups of employees in a single bargaining unit.

Texas Pipe Line attacks the exclusion of the Hearne and Evangeline divisions on the ground that in violation of Section 9(c) (5) of the Act, 29 U.S.C.A. § 159(c) (5), the Board based its decision as to bargaining units on the extent of organization of the employees. That section provides, "In determining whether a unit is appropriate for the purposes specified in subsection (b) of this section the extent to which the employees have organized shall not be controlling." The Board expressly excluded the employees in Hearne and Evangeline on the basis that they have not been represented by the Union, and the Union had made no showing of interest among them. In N. L. R. B. v. Glen Raven Knitting Mills, 4 Cir., 1956, 235 F.2d 413, the Court overturned a Board determination on the ground that it was based on the extent of employee organization. Other decisions have upheld Board findings with the explanation that the Board had relied on the extent of organization only as a contributing factor and not as the "controlling" factor. Westinghouse Electric Corp. v. N. L. R. B., 3 Cir., 1956, 236 F.2d 939, 943; Foreman & Clark, Inc. v. N. L. R. B., 9 Cir., 1954, 215 F.2d 396, 406, cert. denied, 348 U.S. 887, 75 S.Ct. 207,

99 L.Ed. 697; N. L. R. B. v. Salant & Salant, Inc., 6 Cir., 1948, 171 F.2d 292.

We cannot accept the contention that the statute entirely precludes the Board from allowing its decision on a bargaining unit to depend in certain cases on the extent of employee organization. The language of the provision is ambiguous: it is not clear whether the statement that the extent of organization shall not be "controlling" means that it is not to be controlling in *any* case or simply that it is not to be controlling in all cases to the exclusion of all other factors. A factor may be entitled to weight although not controlling. By definition such a factor, in a close case, may be determinative; otherwise the factor is deprived of all significance.

This is one instance when a literal construction agrees with sound policy. Giving the statutory language a literal reading, one would have to say that the extent of organization, although not "controlling", is not ruled out as a factor to be given weight. This construction is in accord with three Supreme Court decisions issued before the enactment of Section 9(c) (5) in 1947, based on the Court's interpretation of policy considerations.[4] The legislative reports give no reasons for the inclusion of the provision in the Taft-Hartley Act that would indicate whether its purpose was to codify the earlier decisions holding that extent of organization is not decisive or its purpose was to overrule their declaration that it is a significant factor.[5] Statutory divination can be pushed only so far. We would not push it to the point of finding a necessary implication in the unexplained, ambiguously worded language of Section 9(c) (5) that the section overruled the jurisprudence and eliminated a factor heavily relied on in the past. Indeed it is difficult to imagine that Congress intended the ex-

4. May Department Stores Co. v. N. L. R. B., 1945, 326 U.S. 376, 379–380, 66 S.Ct. 203, 90 L.Ed. 145; N. L. R. B. v. Hearst Publications, 1944, 322 U.S. 111, 133–134, 64 S.Ct. 851, 88 L.Ed. 1170; Pittsburgh Plate Glass Co. v. N. L. R. B., 1941, 313 U.S. 146, 156–157, 61 S.Ct. 908, 85 L.Ed. 1251.

5. H.R.Conf.Rep. No. 510, 80th Cong., 1st Sess. 48 (1947).

tent of unionization to have no weight in the determination of the appropriate bargaining unit. Once it is acknowledged that the factor is significant, the propriety of relying on this factor in close cases cannot be contested. This is a close case. The Board's determination was proper.

The petition to set aside the decision and order of the Board is denied; the petition to enforce the order of the Board is granted.