**NEUHOFF BROTHERS, PACKERS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 22917.

United States Court of Appeals
Fifth Circuit.

June 17, 1966.

Fritz L. Lyne, Lyne, Blanchette, Smith & Shelton, George C. Dunlap, Dallas, Tex., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, George B. Driesen, Atty., N. L. R. B., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Peter Giesey, Atty., N. L. R. B., for respondent.

Before TUTTLE, Chief Judge, RIVES, Circuit Judge, and CHOATE, District Judge.

TUTTLE, Chief Judge:

This is a petition brought by the company to set aside an order of the National Labor Relations Board and a cross-petition by the Board for enforcement. The Board, affirming the trial examiner's decision, found that the company had violated Sections 8(a) (5) and (1) of the Act, by refusing to bargain with a certified union, following representation proceedings which are the subject of attack by the company.

On July 27–28, 1964, a hearing was held on the union's representation petition, requesting certification for a unit, limited to "all production and maintenance employees of the company's Dallas plant, located at 2821 Alamo Street." On August 28, 1964, based upon the facts adduced in this hearing, the Regional Director issued a decision and direction of election, finding an appropriate unit consisting of "all production and maintenance employees at the employer's Alamo Street plant *and* its hotel and restaurant department Wood Street plant [also in Dallas] * * * including porters and intra-plant truck drivers" but excluding *inter-alia* employees in the feed lot department [at Milford, Texas] and certain other truck drivers. Petitioners request for review of the Regional Director's action was denied by the Board, since it allegedly "raised no substantial issues warranting review."

Pursuant to the Regional Director's order, an election was conducted on September 22, 1964, resulting in 315 votes being cast for the union, 347 against and 43 challenged ballots. The union filed objection to the following employer conduct, allegedly affecting the outcome of the election: [i] Certain pre-election conduct including the following, "By questioning the employees about how they were going to vote;" [ii] the manner in which the company prevented three alleged employees from voting by denying them access to the grounds of the company, where the balloting was taking place. Finding that the company had engaged in "conduct reasonably calculated to interfere with a free choice in the election," the Regional Director, on January 12, 1965, set the election aside. The company's request for review of this order was denied by the Board.

The Regional Director then ordered a second election, which was held on February 18, 1965, at a public park near the Alamo Street plant, the reason being given that the company had previously refused to permit employees allegedly entitled to cast challenged ballots to enter its premises. This election resulted in 388 votes for the union, 295 against and 58 challenged votes. During this election, Board agents who were conducting it refused to allow 13 employees, whose

ineligible (supervisory) status had been "established" by the Regional Director after the first election, to vote. However, these agents permitted two other employees, previously found ineligible, to cast challenged ballots, after questioning revealed that the duties of these two employees had changed. While the polls were still open, the company requested that the Regional Director allow the 13 "supervisory" employees at least to cast challenged ballots. This request was denied.

Subsequently, the company filed a timely objection to the second election, alleging that certain conduct of the Board agents in the presence of voting employees indicated that the Board favored the union in the election. The Regional Director found this contention to be without merit and also found that the 13 employees denied ballots had previously been found to be supervisors and were thus properly excluded from the unit. Based upon these findings, he certified the union as the representative of the employees in the appropriate unit. The company's request for a review of this latter decision was denied by the Board as raising no substantial issues warranting review.

The union unsuccessfully sought to bargain with the company; it then filed charges and the complaint in the instant case issued. After the company answered, the general counsel moved for judgment on the pleadings. The trial examiner issued an order to show cause directing the company to indicate the factual issues it intended to raise. Upon consideration of the company's response, the examiner concluded that no factual hearing was required and determined the issues of law in favor of the general counsel.

■ In view of the state of the record (in effect, the grant of summary judgment), we must assume that for the Board to prevail, any factual issues that may have properly been raised before the Board, are to be viewed most strongly from the standpoint of the company, with the exception of the issues as to the appropriateness of the bargaining unit. As to this, there was a hearing and resolution of the issue by the Director.

■■ In light of the "large measure of informed discretion" committed to the Board in this area of fixing appropriate units, Packard Motor Car Co., v. N. L. R. B., 330 U.S. 485, 491, 67 S.Ct. 789, 91 L.Ed. 1040, we conclude that the Board's determination that the unit actually designated was an appropriate unit even though some other unit might also have been properly designated, must be affirmed.

The two grounds for setting aside the first election were: (1) the company prevented three persons from entering its premises to cast ballots, and (2) in the period between the filing of the petition and the election, supervisory employees interviewed individual employees, sometimes at places away from their work stations, urging them to vote against the union.

We deal first with the action of the company in turning away from the gate three "employees." It is not disputed that the desirable atmosphere surrounding holding of such an election is what has been described as "laboratory conditions." See N. L. R. B. v. Houston Chronicle Publishing Company, 5th Cir., 300 F.2d 273, 278. It is against this background that we test the undisputed facts relating to the denial of access of the three persons to the company's premises. Since there was no resolution of any disputed issues, we must assume the facts to be as stated by the affidavit of Joe Boyd Neuhoff, an employee of the petitioner who was stationed at the main gate of the plant with instructions to not allow unauthorized persons on the premises during the hours of the election.

The Regional Director's notice of election described those eligible to vote as those of the unit "who were employed during the payroll period ending August 27, 1964." It further provided that "employees who have quit or been discharged for cause since the designated payroll period * * * and who have

not been rehired or reinstated prior to the date of the election, shall not be eligible to vote." Neuhoff had a list of the persons who were identified as being on the payroll for the period ending August 27th. This affidavit stated that three former employees of the company,[1] accompanied by two labor organizers, sought to come on to the property and go to the polling place, stationed some 120 feet from the main gate, claiming the right to cast their ballots. Stating that this group "in obvious view of everyone, began to march into the plant through the front gate," Mr. Neuhoff said that he met the group in the middle of the gate and told them in a normal tone of voice that they could not come in to the plant because their names were not on the voting eligibility list. Mr. Neuhoff stated that one of the organizers yelled in a loud voice to Mr. Boyd of the National Labor Relations Board, who was walking across the parking lot, and complained to Mr. Boyd, who then left, after having said nothing. He stated that the organizer, in an angry voice, stated that he was going to get a court order and the response was that he should go ahead and get the order. The three workers remained in the middle of the gate and listened to the conversation.

In his decision, the examiner concluded that the three men should have been permitted to cast challenged ballots, and set the election aside, "not because the ballots were sufficient in number to have effected the outcome (they were not), but because in excluding potential voters from the premises and not letting them cast challenged ballots, the company violated section 8(a) (1) of the Act (citing Macon Textiles, Inc., 80 NLRB 1525, 1549–1550,) thereby invalidating the election (citing Dal-Tex Optical Co., 137 NLRB 1782, 1786–1787)." After so stating, the Regional Director added "neither can it be said that the above activity [excluding the potential voters] was isolated, as the action was taken in the presence of other voters and in an area clearly visible to employees on their way to vote."

As this court said in National Labor Relations Board v. Huntsville Manufacturing Company, 5th Cir., 203 F.2d 430, "Congress entrusted to the board the control of the election proceedings and the determination of the steps necessary to conduct an election. N. L. R. B. v. Waterman, 309 U.S. 206, 60 S.Ct. 493, 84 L.Ed. 704; Inland Empire District Council, etc. v. Millis, 325 U.S. 697, 65 S.Ct. 1316, 89 L.Ed. 1877. * * *. It was primarily for the board to determine whether the election was fairly conducted or was unfairly conducted and should be set aside." 203 F.2d 430, 434. We conclude that the Board here conformed "to the standard of a reasonableness which courts may exact of the board in the exercise of the discretion accorded it in determining 'whether or not the election should be set aside for irregularities in procedure.'" N. L. R. B. v. Huntsville Manufacturing Co., supra, p. 434. We should therefore not upset the Board's determination that this first election should be set aside.

The Board having concluded that the conduct of the company by having its representative at the gate who turned the workers away "in an area clearly visible to employees on their way to vote" was such as to destroy the "laboratory conditions" desirable for the conduct of a Board election, it is not necessary for us to consider the second issue, touching on the findings that company supervisory employees had questioned employees during the pre-election period. If there are questions of fact as to this issue which were resolved only *ex parte*, and are thus subject to attack, it is not necessary that these questions be resolved in the circumstances now present.

---

1. Two of these had filed unfair labor practice discharge charges with the Board, and the third later filed a similar charge. The Board subsequently upheld the contention of one of these three, finding that he had been discriminatorily discharged and ordered his reinstatement. The other two charges were dismissed.

We come next to the contention of the petitioner that the second election was invalid because thirteen members who fell within the category of employees during the payroll period ending August 27, 1964, were not permitted to vote, even by casting challenged ballots, because the Director ascertained that they had theretofore been found to be supervisory employees. As the Board points out, even if all thirteen of these persons had been permitted to vote and had voted against the union, this could not have affected the result. The question therefore is whether the denial by the Board's agents of their request to cast challenged ballots can be equated with the conduct of the company employee Neuhoff in turning away the three employees at the time of the first election. Again, bearing in mind the degree of discretion which is necessarily lodged in the Board with respect to determining the fairness of elections, it can be readily seen that there is a substantial distinction between what happened at the first election and what happened on the second. It was the Board representative conducting the election who, when the thirteen presented themselves, declined to permit them to cast ballots. This was the act of an impartial Board representative, charged by law with the duty of running a fair election, who, having been informed by the Director that these men were supervisors and thus not eligible, declined to permit them to vote. While, of course, biased conduct by such Board representatives that would destroy the desired "laboratory conditions," would also be a proper basis for setting aside an election, here there is no charge of any fact from which a fact finder could determine that the manner in which the request to vote was turned down could prejudice or deter others of the employees from casting their ballots as they saw fit. We are constrained, therefore, to accept the determination by the Board that the simple conduct of the Board agents in declining the right of these thirteen individuals to cast a ballot did not create an atmosphere that in any way prejudiced the election.

In view of the fact that the ballots of these thirteen individuals would not have affected the results, it therefore becomes unnecessary to determine the correctness of the determination that they were, in fact, supervisors. The petitioner seriously challenges this determination, asserting that no factual determination, with an opportunity to be fully heard, has been afforded the petitioner on this matter. The Board responds that the failure to have a hearing on any truly contested facts in this regard was the fault of the petitioner in not adequately asserting facts to substantiate such a charge in its effort to obtain a review before the Board. We do not need to determine whether, in fact, the *ex parte* findings here could be supported on the Record as made if this were a critical issue, because, as we have pointed out, it is of no importance to ascertain the correctness *vel non* of the Director's finding that they were supervisors. It is the effect of their challenge that is alleged by the petitioner to have the effect of vitiating the second election. Since this challenge is not valid, we need not ascertain whether, if the finding were crucial, it could stand in light of the procedural posture of the case.

This case is not without difficulty. The Board ascertained that conduct of the respondent denying access to the voting place by three persons who claimed the right to cast ballots (which right was later vindicated as to one), such conduct being in view of other employees, destroyed the "laboratory conditions" desirable for the conduct of the election and thus set aside an election which had been otherwise clearly won by the company; thereafter, at a second election, which otherwise was overwhelmingly won by the union, the Board agents at the voting place declined to permit thirteen persons, found *ex parte* by the Director to be supervisors, to cast votes. The Board declined to find that this circumstance destroyed the "laboratory conditions."

In spite of the difficulties of the case, however, we conclude that there is a valid basis for distinguishing the two

sets of circumstances because of the self-help exercised by the employer in the first instance. Furthermore, the overwhelming vote cast in the second election in favor of the bargaining agent adds weight to the argument that an appellate tribunal must be slow to overrule a discretionary determination by the Board.

The Order will be enforced.