**HOWELL REFINING COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

**No. 24802.**

United States Court of Appeals
Fifth Circuit.

Aug. 12, 1968.

Frank S. Manitzas, Theo F. Weiss, San Antonio, Tex., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, William H. Carder, Atty., NLRB, Washington, D. C., for respondent.

Before RIVES, GEWIN and THORNBERRY, Circuit Judges.

GEWIN, Circuit Judge:

Howell Refining Company petitions this court to review and set aside an order of the National Labor Relations Board issued against it on May 10, 1967. The order requires the company to cease and desist from unfair labor practices, to bargain with the Oil, Chemical and Atomic Workers International Union, and to post appropriate notices. The Board cross-petitions for enforcement of its order. We deny enforcement and remand the case for further proceedings.

To place the questions presented in context we shall summarize the events leading up to the Board's May 10 order. On March 23, 1966, the union filed a representation petition with the Board requesting certification as the bargaining agent for a unit consisting of all truck and transport drivers, truck and auto mechanics, and production and maintenance employees in the company's San Antonio and Corpus Christi, Texas, plants. The company contended that

separate units at each of the two plants were appropriate. Following a hearing the Regional Director determined that the multi-plant unit requested in the union's petition was warranted. The company also objected to the exclusion from the bargaining unit of certain clerical employees, but the Regional Director resolved this issue in favor of the union also. The company promptly requested that the Board review the Regional Director's decision, urging the appropriateness of separate units and the inclusion in each unit of the clerical employees. The Board denied the request on the ground that it "raised no substantial issues warranting review except as to the unit placement of yield clerks." Consequently, the Regional Director's decision was amended to permit yield clerks to vote subject to challenge.

An election in June resulted in a union victory, thirty-eight votes being cast for the union, eighteen against the union, and four challenged ballots. The company filed timely objections to the election, alleging that conduct attributable to the union had improperly influenced its outcome. It also objected again to the Regional Director's determination of the appropriate unit. Additionally, the company attacked the "names and addresses" rule established by the Board in *Excelsior Underwear, Inc.*[1] After conducting an administrative investigation, the Regional Director issued on August 19, 1966, a Supplemental Decision, Order and Certification of Representative in which he overruled the company's objections and certified the union as the exclusive bargaining representative. In September the company filed timely objections to the supplemental decision, contending that the Regional Director's rulings were erroneous and that, in any event, a formal hearing on the objections had been improperly denied. On November 3, 1966, the Board denied the company's request on the ground that it raised no substantial issues warranting review.

Despite the certification by the Board, the company refused to recognize or bargain with the union. On December 15, 1966, in response to the union's charges, a complaint issued against the company alleging violations of section 8(a) (1) and (5) of the National Labor Relations Act.[2] In its answer the company attacked the validity of the certification and again denied the appropriateness of the bargaining unit. General Counsel filed a motion for summary judgment on the ground that the company's answer had raised no triable issues of fact. In its answer in opposition to the motion, the company reasserted the invalidity of the union certification and attached copies of documents and other evidence previously submitted in the representation proceedings. In addition, the company stated that it had been bargaining with the union in good faith since January 16, 1967, and proposed that the disposition of the motion be suspended pending the outcome of negotiations. The union opposed the request on the ground that the company had not recognized it as the certified representative of the employees. The General Counsel also opposed the request on the basis that occurrences subsequent to December 1966 were irrelevant to the issues presented by the complaint.

The Trial Examiner found that the case was not mooted by subsequent negotiations between the parties. He further concluded that the issues raised by the company had already been decided in the representation proceeding; that he was bound by those determinations; and that, consequently, no hearing was necessary in the absence of newly discovered or previously unavailable evidence. Accordingly, the Examiner found that the company had violated section 8(a) (1) and (5) of the Act and granted the motion for summary judgment. The Board affirmed the Examiner's ruling,

---

1. 156 N.L.R.B. No. 111, 1966 CCH NLRB ¶ 20,180.

2. 29 U.S.C. § 158(a) (1), (5) (1964).

adopted his finding that the company had violated the Act by refusing to recognize and bargain with the union, and issued the order which the company now seeks to set aside.

The company contends that the Board's order should be vacated because (1) the Board abused its discretion in determining that a multi-plant unit was appropriate; (2) the Board erred in failing to find that the disclosure of the names and addresses of employees to the union invalidated the election; (3) the Board erred in failing to find that the union and its supporters engaged in preelection conduct that rendered a free expression of choice impossible; and (4) the Board's refusal to grant a post-election hearing on the company's claim of unlawful union conduct constituted a denial of due process.

We have given careful consideration to each of the above contentions and we have reviewed the entire record. We find no abuse of discretion in the Board's determination that a multi-plant bargaining unit is appropriate. We also find that the submission by the company of employees' names and addresses as required by the *Excelsior* rule does not invalidate the election. However, we do not reach the question of whether there was interference with the free choice of the employees because we conclude that this question should not have been decided by the Board summarily and that the company should have been granted a hearing. Consequently, the order of the Board is set aside and the case is remanded to the Board for a hearing on the company's claim that conduct attributable to the union generated such an atmosphere of fear, concern, and confusion among the employees that a free expression of choice in the election was rendered impossible.

## I

A considerable amount of evidence was presented by the parties on the multi-plant-unit question at the hearing held during the representation proceeding. The Board considered all the pertinent facts and determined that a multi-plant unit was appropriate in the instant case. The company asserts that this decision of the Board was in violation of section 9(c) (5) of the National Labor Relations Act which provides:

> In determining whether a unit is appropriate for purposes specified in subsection (b) of this section *the extent to which the employees have organized shall not be controlling.*[3]

As clearly appears from its terms, this provision only prohibits the extent of organization from being the *controlling factor* in determining the appropriate unit.[4] The record refutes the company's argument that the Board's determination was controlled by the extent of union organization. The evidence shows that the Board considered numerous and various factors and found from the evidence presented (1) that the production operations, job classifications, and employee skills were essentially similar in the two plants; (2) that employees were occasionally interchanged between the two plants; and (3) that the company's managerial and labor practices, pay scales, and employee-benefit program were centrally administered. These findings are amply supported by the record. We therefore conclude that the Board's designation of a multi-plant unit is clearly reasonable and well within its wide discretion.[5]

## II

The company contends that the election should have been set aside because

---

3. 29 U.S.C. § 159(c) (5) (1964) (emphasis added).

4. Metropolitan Life Ins. Co. v. NLRB, 328 F.2d 820 (3d Cir. 1964), vacated on other grounds, 380 U.S. 523, 85 S.Ct. 1325, 14 L.Ed.2d 265 (1965) ; Texas Pipe Line Co. v. NLRB, 296 F.2d 208 (5th Cir. 1961).

5. See Packard Motor Car Co. v. NLRB, 330 U.S. 485, 67 S.Ct. 789, 91 L.Ed. 1040 (1947) ; Texas Pipe Line Co. v. NLRB, 296 F.2d 208 (5th Cir. 1961).

it was forced, under protest, to comply with the Board's *Excelsior* rule. This rule requires employers to file with the Regional Director a list containing the names and addresses of all employees eligible to vote in the election. The Regional Director then makes the list available to all parties involved in the election. The company's primary contention is that the disclosure of this information afforded the union an unfair and inequitable opportunity to propagandize through home visitation and made possible certain alleged coercive conduct on the part of the union.[6]

The Board's *Excelsior* rule was adopted to guarantee all participants in the election access to the electorate and to ensure an informed electorate. The rule eliminates the time-consuming process of investigating challenges to voter eligibility on the eve of elections solely because of a lack of knowledge of voters' identity.[7] We find the rule to be a valid exercise of the Board's power to ensure employees a fair and free choice in the selection of their representative.[8] The possibility that the union or its supporters abused the opportunity of communicating with the employees in this case is insufficient, in our opinion, to invalidate the *Excelsior* rule or to set aside the election.[9]

### III

The company's allegation that conduct attributable to the union destroyed the laboratory conditions under which the election should have been conducted and improperly influenced its outcome may be divided for purposes of discussion into three parts: (1) preelection conduct of union supporters, (2) a union campaign letter, and (3) conduct of union supporters at the polls.

In support of its contention that the union had engaged in coercive preelection conduct, the company submitted the affidavits of four employees which alleged various incidents involving threats of physical harm, damage to personal property, and an intimidating nighttime visit by two men to an employee's apartment. Affidavits of five other employees were submitted which alleged that the acts and conduct in question readily came to the attention of other employees and were the subject of discussion throughout the company's San Antonio plant. The affiants were unable to identify all of the persons who engaged in the alleged coercive conduct, but the affidavits did disclose that certain of the alleged acts were engaged in by six named individuals, three employees and three former employees. The company contended that these named individuals were acting as agents or representatives of the union, or that they held themselves out as agents or representatives of the union. Evidence was presented by the company to the Regional Director to support its claim of agency.

The company also alleged that the union had distributed, approximately thirty-six hours before the election, a letter which bore the signature of Carl S. Anderson, President of Local 4–747, and which contained a serious and misleading statement. The statement is as follows:

> For your information it is my understanding that Howell's attorneys lost

---

6. The alleged improper conduct of the union is discussed in part III of this opinion.

7. Excelsior Underwear, Inc., 156 N.L.R.B. No. 111, 1966 CCH NLRB ¶ 20,180.

8. See NLRB v. Rohlen, 385 F.2d 52 (7 Cir. 1967); NLRB v. Hanes Hosiery Div., 384 F.2d 188 (4 Cir. 1967), cert. denied, 390 U.S. 950, 88 S.Ct. 1041, 19 L.Ed.2d 1141 (1968). Although the company does not raise the point, the *Excel-*

*sior* rule has been held invalid in the First Circuit because of the manner of its adoption. Wyman-Gordon Co. v. NLRB, 397 F.2d 394 (1 Cir. 1968) (two-to-one decision). We take a different view of the matter and decline to follow the *Wyman-Gordon* case.

9. See NLRB v. Duncan Foundry & Mach. Works, Inc., 7 Cir. 1968 [No. 16672, January, 16, 1968] 57 CCH Labor Cases ¶ 12,488.

their appeal to the National Labor Relations Board, Washington, D. C.

The company contended that the employees understood and interpreted this statement as referring to an unfair labor practice charge involving three discharged employees, when in fact the only proceeding involving the company before the Board during the course of the election campaign was the company's objection to the multi-plant bargaining unit. In support of these allegations, the company furnished the Regional Director with the affidavits of ten employees who alleged that they construed the union's statement as referring to the unfair labor practice case. The company immediately attempted to correct the alleged misrepresentation by posting and distributing to its employees a written notice on the afternoon prior to the election, which was scheduled to begin at 7:30 the following morning. However, the company contended that only about half of its employees were on duty at the time the notice was posted and distributed.

The company's remaining objection concerns the appearance at the polls of three discharged employees who were permitted to vote pending disposition of claims that their discharge was unlawful. Contrary to procedure agreed upon by the company and the Board agent, the three discharged employees circulated among and conversed with other employees on the premises for approximately fifteen minutes before casting their ballots. Affidavits were submitted by seven employees to this effect. One employee submitted an affidavit stating that one of the three had solicited his vote for the union. These three employees are three of the six named individuals who, the company alleged, engaged in coercive conduct as union agents prior to the election.

After an *ex parte* investigation, the Regional Director issued his Supplemental Decision. He found that the evidence did not adequately establish that the six named individuals were agents on behalf of the union; at most, the evidence showed that they were staunch supporters of the union. The Director noted that no evidence was presented or adduced to show condonation or adoption by the union of any of the alleged threats, and that the union specifically denied that any of the named individuals was authorized to act as its agent. He found that all of the alleged threats were denied by the employees to whom they were attributed, and that the alleged conduct attributed to unidentified parties was of such a minimal nature that it would not warrant setting aside the election even if the identity of the party or parties was known. On the basis of these findings, the Regional Director concluded that the employees named did not engage in a course of conduct, as agents for the union or otherwise, which destroyed the atmosphere necessary to the exercise of a free choice in the election. Accordingly, the company's allegations regarding preelection conduct were held to be without merit. Moreover, even assuming that Anderson was an agent of the union and that the statement objected to was inaccurate or misinterpreted, the Director thought it not so misleading as to prevent the exercise of free choice. Therefore, the company's objections to the campaign letter were concluded to be without merit. Having already found that the three discharged employees were not union agents, the Regional Director found that electioneering by discharged employees near polling places during an election was not a basis for setting aside an election. Consequently, the company's final objection to the election was rejected.

The company strongly urges that it was entitled to a hearing on the issue of whether improper conduct attributable to the union influenced the outcome of the election. There is no statutory provision for post-election hearings. Such a hearing is granted by the Board only if it appears that the objections to the election are based upon allegations which have a basis in law and support in evidence and that "substantial and mate-

rial factual issues" are raised.[10] In reviewing Board orders issued on the basis of *ex parte* investigations, courts have often found that material factual issues were raised and, therefore, have remanded the case to the Board for a hearing on the questions presented.[11] Our review of the record in the instant case convinces us that substantial and material factual issues are present and that the evidence tendered by the company meets the prescribed standards. Specifically, we find that the company's allegation that the individuals involved were union agents and the union's denial of agency, when considered in light of all the evidence, create such an issue. In addition, the Regional Director's decision indicates that the employees who were accused of making threats denied such conduct on their part. Thus there appears to be a head-on-clash between the company on the one hand and the union and the employees on the other.[12]

However, the Board contends that the Regional Director, in making his determination that the free choice of employees was not abridged, credited the company with all of its factual allegations, that is, the Director assumed that the individuals named were agents and that they engaged in the coercive conduct described by the various affidavits. Thus the Board urges that no factual dispute is present.[13] We disagree, however, with the Board's interpretation of the Regional Director's decision. Nowhere in the decision is it absolutely clear that the Director accepted the company's allegations that preelection threats and coercion did in fact occur. Additionally, the reference to the named individuals as "agents or otherwise" follows on the heels of a paragraph in which the Regional Director specifically and at length found no agency. The Board states in its brief that where "alleged misconduct is attributable to neither party, the Board will accord 'less weight to such conduct' than it might otherwise." In view of this emphasis on the finding of no agency and the importance of that finding, we think that there is a substantial and material factual issue in question.

■ Furthermore, the Regional Director apparently considered the company's objections to the election separately rather than as a whole in determining whether employees were prevented from exercising a free choice in the election. However, each objectionable act should not be considered as standing alone but consideration should be given to the combined or cumulative effect of all of them.[14] Our thoughts on this matter are well expressed in our *Home Town Foods* decision:

> Viewed cumulatively, we have no doubt that the employer's objections charge that the election was conducted in less than the laboratory conditions so often promised by the Board and required by the Courts. We are also of the opinion that substantial and material factual issues exist which make it necessary that the employer be given a hearing and an opportunity to establish his charges, including cross examination of the witnesses for the union. One of the important issues is the effect of the election and pre-election practices of union supporters on the minds of the voters. The Courts have usually applied an objective test to determine whether

10. Compare NLRB v. O. K. Van Storage, Inc., 297 F.2d 74 (5th Cir. 1961), with 29 C.F.R. 102.69(c).

11. See NLRB v. Ortronix, Inc., 380 F.2d 737 (5th Cir. 1967); Home Town Foods, Inc. v. NLRB, 379 F.2d 241 (5th Cir. 1967); United States Rubber Co. v. NLRB, 373 F.2d 602 (5th Cir. 1967); NLRB v. Lamar Elec. Membership Corp., 362 F.2d 505 (5th Cir. 1966).

12. NLRB v. Ortronix, Inc., 380 F.2d 737, 740 (5th Cir. 1967).

13. See Newport Mining Corp., 170 N.L.R.B. No. 85, 1968 CCH NLRB ¶ 22,270; N.L.R.B. v. Air Control Products, 335 F.2d 245 (5th Cir. 1964). See also Neuhoff Bros. Packers, Inc. v. N.L.R.B., 362 F.2d 611 (5th Cir. 1966).

14. Home Town Foods, Inc. v. NLRB, 379 F.2d 241 (5th Cir. 1967).

interference with an election is sufficient to set it aside. * * * Subjective evidence of fear and coercion, may carry the day as well.[15]

We think, therefore, that the Board should have held a hearing to determine the material factual issues presented. Accordingly, enforcement of the Board's order is denied and the case is remanded for a full hearing as to the validity of the election and certification.

Enforcement denied and the case is remanded.