**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GENESCO, INC., Respondent.**

No. 25592.

United States Court of Appeals
Fifth Circuit.

Jan. 7, 1969.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Frank H. Itkin, Lawrence J. Sherman, Atty., NLRB, Washington, D. C., for petitioner.

Madeline Balk, New York City, Thomas J. Tubb, Tubb & Stevens West Point, Miss., Seligman & Seligman, New York City, for respondent; Alan D. Eisenberg, New York City, on brief.

Before DYER and SIMPSON, Circuit Judges, and CABOT, Judge.

DYER, Circuit Judge:

■ The issue which we are called upon to resolve is whether the Board deprived an employer of due process in refusing to hold a formal hearing on the company's objections to the representation election won by the union, based upon alleged misrepresentations and improper conduct by the union. It comes to us in the cumbersome context of a violation of sections 8(a) (1) and (5) of the National Labor Relations Act,[1] on a petition by the Board for enforcement of its order that the company cease its refusal to bargain with the union.[2] Unfortunately, this time-consuming, roundabout proceeding is the only method for challenging the Board's certification of a union because Board decisions in representation proceedings usually are not reviewable by the courts of appeal. The 8(a) (5) cases of this sort are legion, N.L.R.B. v. Air Control Products of St. Petersburg. Inc., 5 Cir. 1964, 335 F.2d 245, and continue unabated, Pepperell Mfg. Co. v. N.L.R.B., 5 Cir. 1968, 403 F.2d 520, (November 13, 1968); N.L.R.B. v. Smith Indus., Inc., 5 Cir. 1968, 403 F.2d 889 (November 12, 1968). We attach no opprobrium to the employer's refusal to bargain where, as here, it is the only means of inveighing the Board's findings in an underlying representation hearing.

On August 5, 1965, a Board-conducted election was held at the company's plant in Iuka, Mississippi. The union won by a vote of 389 to 308 (with 15 challenged ballots). On August 10, 1965, the company filed timely objections to the election on the grounds that the union, in its pre-election campaign, had made material misrepresentations of the average hourly wage and wage increases at competitor's organized plants, and the minimum starting rate which it had obtained at a major competitor of the company that the union had recently organized. Further objection was made that the union had distributed or shown purportedly typical check stubs of employees in organized competitor's plants as their regular earnings, when in fact the check stubs shown were unusual, high earnings. Among the other misrepresentations charged were the union's strike record and strike benefits. Specific instances were also delineated to support a charge that there was an "atmosphere of fear and confusion" surrounding the election. The Regional Director[3] conducted an ex parte administrative investigation of the objections[4] and subsequently issued a Supplemental Decision in which he overruled the company's objections. The company filed a request for review with the Board which was summarily denied and the union was certified.

When the union made a bargaining request, the company declined on the ground that the certification was improper and that such a refusal was the only basis upon which a judicial review of the validity of the certification could be obtained. The union filed charges and a complaint was issued by the Board. The company answered. Gener-

1. 29 U.S.C.A. 158(a) (1) and (5).

2. Boot and Shoe Workers' Union, AFL–CIO.

3. The Acting Regional Director took the official action in this case. For convenience, he will be referred to as the Regional Director.

4. Section 102.69(c) of the Board's Rules, 29 C.F.R. § 102.69(c) provides for such an investigation where the objections to the election do not raise substantial and material factual issues.

al Counsel filed a motion for judgment on the pleadings, and in answer to the Board's Show Cause Order the company responded that in the representation proceedings issues of fact and credibility determinations had been made ex parte and that a denial of a hearing would be a denial of due process. The company also made an offer of proof in addition to the evidence previously adduced to support its charges of material misrepresentations made by the union. The Trial Examiner rejected the company's request for a hearing and granted the motion for judgment on the pleadings. The Board adopted the Trial Examiner's decision *pro forma.*

Judge Ainsworth in an impeccably sound opinion for the Court, N.L.R.B. v. Smith Indus., Inc., supra, recently came to grips with post-election representation hearing problems strikingly similar to those *sub judice.* He posited the threshold determination to be made in these terms:

> In order to obtain a hearing in a post-election representation proceeding, the objecting party must supply prima facie evidence, presenting "substantial and material factual issues," which would warrant setting aside the election. 29 C.F.R. § 102.69(c). This administrative standard is also the constitutional standard under the due process clause. Classically, a hearing is required where it is necessary to preserve a party's rights.

Id. at 892 of 403 F.2d (footnotes omitted). As a bench mark in determining when a hearing must be held the opinion continues:

> Thus, this Court's standards for the granting of summary judgment on pleadings and affidavits are instructive as to whether the Board acted within constitutional limits in failing to grant a hearing.

Id. at 892 of 403 F.2d.

In urging that its order be enforced the Board's position may be succinctly stated as follows: since the relevant factual issues were not materially disputed, an evidentiary hearing would have been a "useless and senseless formality." N.L.R.B. v. Air Control Products of St. Petersburg, Inc., supra 335 F.2d at 249. The Director, it says, determined as a matter of law that statements allegedly made by union representatives did not interfere with the employees' freedom of choice in the election.

The company counters by raising objections to the union's pre-election campaign based upon "specific evidence of specific events from or about specific people," United States Rubber Company v. N.L.R.B., 5 Cir. 1967, 373 F.2d 602, 606, the cumulative effect of which would require that the election be set aside or at least would entitle the company to a post-election hearing.

■ The cleavage between the parties simply stated is whether or not there were substantial and material issues which could be determined properly only by a hearing, Id. at 605 accepting, as we do, "the Board's findings of fact so long as they are supported by substantial evidence on the record considered as a whole. This is the test prescribed by 29 U.S.C.A. § 160(e) and Universal Camera Corporation v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456 (1952)." N.L.R.B. v. Houston Chronicle Publishing Company, 5 Cir. 1962, 300 F.2d 273, 277.

■ We must examine the factual issues of this case to determine whether the election "was conducted in less than the laboratory conditions so often promised by the Board and required by the Courts." Home Town Foods, Inc. v. N.L.R.B., 5 Cir. 1967, 379 F.2d 241, 244.

First, the union informed employees of Genesco that the average wage at a competitor's unionized plant was $1.93 per hour, whereas the correct figure could not have exceeded $1.81 an hour.[5] When the Supplemental Decision was issued it stated that a union representative contended that he made this claim to only three or four employees. The company

---

5. Even the $1.81 figure was controverted.

submitted in its Request for Review statements of seventeen employees showing that the union made such a misrepresentation to them and in its Response to the Board's Order to Show Cause proffered proof that thirty-three employees would testify that they were told by the union that the competitor's plant was paying an average hourly wage of $1.93. The record indicates that the dissemination of this information was made by the union just before the election and that the company was unaware of it. Other than a finding that the correct figure was $1.81 an hour no mention is made in the Supplemental Decision concerning the union's representation of the competitor's average hourly rate or the impact on the employees considered. Clearly the company adduced sufficient evidence to make a prima facie case which the Regional Director ignored.

Second, preceding the election and on the day of the election the union exhibited and distributed to the company's employees pay check stubs of employees in organized plants of three competitors of Genesco, showing unusual, high earnings without advising the company's employees that they were special or unusual earnings. A fair reading of the record compels the conclusion that the union's objective was to leave the impression that the stubs represented typical earnings at organized plants with the implication that a similar success could be achieved for Genesco's employees by the union. The Regional Director failed entirely to consider the company's objection and instead treated it as one involving the authenticity of the check stubs. His determination was that "the check stubs were authentic and represented the actual pay received by employees for a stated number of hours worked" and, under the circumstances, the foregoing conduct was insufficient "to warrant setting aside the election.". If the Director's disposition of the company's objections were permitted to stand under the foregoing circumstances there would never be a need for a hearing on objections to an election. N.L.R.B. v. Lamar Electric Membership Corp., 5 Cir. 1966, 362 F.2d 505, 508.

Third, the company submitted evidence that the lowest *starting* rate at a competitor's organized plant was $1.25 an hour, while the union told the employees before the election that the starting rate was $1.42 an hour. The Regional Director ignored this evidence and held that one employee was told by the union that the lowest *base* rate, not starting rate, was $1.42 an hour at the competitor's plant and that this was true. The company, having had no opportunity to rebut the union's claim before the Supplemental Decision was issued, submitted with its Request for Review statements from thirteen additional employees that they were told about the *starting* rate, not the *base* rate, and in its Response to the Order to Show Cause the company offered to prove that nineteen employees would so testify. Manifestly, "[t]he truth was not clear, the conclusions of law were not obvious, and the employer should have had a fair hearing." N.L.R.B. v. Smith Indus., Inc., supra at 894 of 403 F.2d.

Finally, the Regional Director found on evidence offered by the company that the union had told Genesco employees that a competitor's employees had received a 13 cents an hour wage increase instead of the actual 6.67 cents. But the union's evidence was credited that this included fringe benefits, and the Regional Director therefore found that it did not constitute "a substantial departure from the truth." The company had been given no opportunity to rebut this before the Supplemental Decision was issued, so it submitted with its Request for Review statements of nine additional employees that they had not been told the increase included fringe benefits and in Response to the Order to Show Cause offered to prove that seventeen additional employees would so testify. Obviously the amount of the wage increase of Genesco's competitor is in dispute and the truth is not clear.

 

 We conclude that the § 8(a) (5) order in this case which rests "on crucial factual determinations made after *ex parte* investigations and without a hearing cannot stand." N.L.R.B. v. Air Control Products of St. Petersburg, Inc., supra 335 F.2d at 249. The action of the Board was arbitrary and unreasonable because the company's objections to the election raised substantial material disputed facts which could be determined properly only by a hearing. N.L.R.B. v. Smith Indus., Inc., supra; Howell Ref. Co. v. N.L.R.B., 5 Cir. 1968, 400 F.2d 213 (August 12, 1968); N.L.R.B. v. Ortronix, Inc., 5 Cir. 1967, 380 F.2d 737; Home Town Foods, Inc. v. N.L.R.B., supra; United States Rubber Co. v. N.L.R.B., supra.[6]

Enforcement of the Board's order is denied and the case is remanded for a full hearing concerning the validity of the election and certification.

6. In addition to the alleged misrepresentation as to wages, the company also complains that material factual issues were raised by the union stating they would pay $35.00 per week to employees on strike when the figure was $15.00; that it had not called a strike in ten years when five strikes had in fact been called; and that threats of job loss were made to employees who voted against the union if it won the election. Suffice it to say that these are disputed material issues that should be considered at the hearing on the remand of this case.