NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

MONROE AUTO EQUIPMENT COM-
PANY, HARTWELL DIVISION,
Respondent.

No. 25867.

United States Court of Appeals
Fifth Circuit.

Jan. 17, 1969.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Herbert Fishgold, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Lawrence M. Joseph, Atty., N.L.R.B. Washington, D. C., for petitioner.

John E. Tate, Lincoln, Neb., Joseph S. Skelton, Hartwell, Ga., Nelson, Harding, Leonard & Tate, Lincoln, Neb., for respondent.

Before BELL, COLEMAN and MORGAN, Circuit Judges.

COLEMAN, Circuit Judge:

The sole issue in this case is whether the Board properly found, in the absence of a hearing, that the Company violated § 8(a) (5) and (1) of the National Labor Relations Act by refusing to bargain with the certified representative of its employees.

The Board petitions for the enforcement of its order dated May 25, 1967, 164 N.L.R.B. No. 144. On both the law and the facts, the case is strikingly parallel to N.L.R.B. v. Smith Industries, Inc., [November 12, 1968, 403 F.2d 889.] We follow *Smith Industries*, deny enforcement, and remand the case to the Board for a hearing as to those issues hereinafter specified.

The Respondent is a Michigan Corporation principally engaged in the manufacture, sale, and distribution of automobile shock absorbers and related prod-

ucts. Its Hartwell, Georgia, plant employs approximately 650 workers. The Union petitioned for certification as exclusive bargaining representative, but lost the consent election held on July 23 and 24, 1964, by a vote of 466 to 147. Objections were filed by the Union, the Regional Director recommended that the election be set aside, no exceptions were raised, the election was set aside, and a second election ordered.

At the second election, conducted March 3 and 4, 1966, the vote was 342 for the Union and 264 against. There were 11 challenged ballots and 2 void ballots.

This time, the Company filed objections, alleging that the Union had engaged in conduct before and during the election which destroyed laboratory conditions allowing for free choice and that the Board agents conducting the election created an atmosphere lacking in impartiality. The Regional Director conducted an administrative investigation of these objections and recommended that they be overruled. On August 18, 1966, the Board found that the Company's exceptions raised "no material or substantial issue of fact or law which would warrant reversal of the Regional Director's findings and recommendations or require a hearing". Accordingly, the Regional Director's report was adopted and the Union was certified. Subsequently, a petition for reconsideration was denied. The Company declined to meet for bargaining purposes, culminating in the issuance of a complaint on December 9, 1966. The answer to the complaint denied the validity of the certification and a hearing was set for February 9, 1967. However, on January 16, 1967, the General Counsel moved for summary judgment which, after a show cause order, was granted. The hearing was cancelled. On May 25, 1967, the Board affirmed this ruling, found the Company in violation of § 8(a) (5) and (1) and ordered it to bargain.

■ Consistently with the teachings of *Smith Industries*, supra, we have evaluated the record as a whole and we are satisfied that as to some issues this is not a case in which "if all the facts contended for by the opposing party 'were credited no ground is shown which would warrant setting aside the election' ". Many of the issues sought to be raised by the Company do fall within that classification, so we catalog those which we consider to have required a hearing, as follows:

(1). The Union, its agents, members and employees engaged in conduct alien to § 7 of the Act by making threats to company employees that they would lose their jobs unless they voted for the Union.

Four employees told the General Counsel of threats made to them by other employees, and a fifth said that on election day he was told by a group of employees that there were mirrors in the voting booths.

The Board agent dismissed this objection as emanating from rank and file employees and therefore not enough, if true, to create such a coercive atmosphere as to prevent a free election.

(2). Anonymous telephone calls were made to employees threatening bodily harm and loss of jobs unless they voted for the Union.

(3). The Union instigated, condoned, ratified, and acquiesced in the action of some of its people in false statements that salaried employees of the Company at Hartwell paid union dues.

Two statements supported this contention.

(4). The Union instigated, condoned, ratified, and acquiesced in the action of some of its people who demonstrated payroll deduction slips of salaried employees of the Company, reporting that certain entries on the slips were in payment of union dues when in reality the deductions were for Georgia income tax.

Besides the statement of two witnesses in this regard, there was a statement that on the night before the election a foreman told his night shift group of seventeen employees that these rumors were incorrect.

(5). Board agents in going about the plant alerting the employees to vote sought advice and direction exclusively from the Union representative and permitted the Union observer to speak, holler at, wave his hand, and otherwise campaign with the employees in the plant during the voting.

Three statements supported this contention; the statements of twenty-one employees denied it. The Board agent concluded that a preponderance *of the evidence* (emphasis added) showed that the Union observer did not campaign, and in any event such contention was not of such serious nature as to warrant setting aside the election.

(6). Board agents permitted the ballot-box to be left completely unattended in a room with an open door. The evidence on this issue was directly conflicting, but that the box was left unattended was supported by the statement of at least three individuals. See the decision of this Court in Delta Drilling Company v. N.L.R.B. [406 F.2d 109], as well as Athbro Precision Engineering Corp., 166 N.L.R.B. No. 116, 65 L.R.R.M. 1699 and Austill Waxed Paper Company, 169 N.L.R.B. No. 169, 67 L.R.R.M. 1366.

■ Whether or not threats are enough to create a coercive atmosphere is a question of fact, N.L.R.B. v. Smith Industries, Inc., supra; Howell Refining Co. v. N.L.R.B., 5 Cir., 1968, 400 F.2d 213; Home Town Foods, Inc. v. N.L.R.B., 5 Cir., 1967, 379 F.2d 241, especially when taking all of the objections as a whole, Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951); Howell Refining Co. v. N.L.R.B., supra; Anchor Manufacturing Co. v. N.L.R.B., 5 Cir., 1962, 300 F.2d 301. Secondly, since the facts in this case are not clear as to the source of the threats, particularly the anonymous telephone calls, it appears that Respondent would be entitled to a hearing on the agency dispute alone. N.L.R.B. v. Smith Industries, Inc., supra. Third, even if the threats did emanate from rank and file employees that would not be enough to dismiss the objection. In

Home Town Foods, Inc. v. N.L.R.B., supra, this Court said:

"We are not impressed with the argument that all coercive acts must be shown to be attributable to the union itself, rather than to the rank and file of its supporters. * * * 'The important fact is that such conditions existed and that a free election is hereby rendered impossible.'"

And in N.L.R.B. v. Tampa Crown Distributors, 5 Cir., 1959, 272 F.2d 470, the Court said of anonymous telephone calls that any exact application of the "agency" test is impractical or impossible.

■ Advocacy of the Union by supervisory personnel is cause to annul an election, N.L.R.B. v. Lamar Electric Membership Co., 5 Cir., 1966, 362 F.2d 505. The allegation of union misrepresentation with regard to the foremen's check stubs is not strongly supported by the two statements and appears to be more of a rumor as evidenced by two other statements. But again a factual issue seems to be presented as to how widespread the rumor was and its effect. Indeed, this "rumor" or "misrepresentation" could not have been limited to just a few employees if one of the night foremen, on election night, felt he should explain to his shift of seventeen men why the foremen's check stubs had a "Union and Other" column. And applying the "misrepresentation test" cited in Pepperell Manufacturing Co. v. N.L.R.B., [November 13, 1968], 403 F.2d 520, a question of fact arises as to whether the employer had sufficient opportunity to correct the misrepresentation. It would appear logical to assume, in the absence of any evidence to the contrary, that the Company would have made every effort to explain the check stubs had it been aware of the rumor. But again this would appear to be a question of fact.

If one couples the threats of bodily harm with the rumor of mirrors in the voting booth, a general atmosphere of fear or reprisal such as to render impossible free choice does not appear so improbable as to permit summary dis-

position. If the rumor is substantial and material, the factual question as to its impact is raised. In N.L.R.B. v. Staub Cleaners, Inc., 2 Cir., 1966, 357 F.2d 1, the Court held that a hearing should have been granted on the matter of the impact of a rumor that Negro employees would be discharged if the Union lost the election, regardless of the source of the rumor. See also, Home Town Foods, Inc. v. N.L.R.B., supra, where employees thought they were being observed in the voting booths.

■ Biased conduct engaged in by N.L.R.B. representatives which destroys desired laboratory conditions for a union representation election is a proper basis for setting aside the election. Neuhoff Brothers Packers, Inc. v. N.L.R.B., 5 Cir., 1966, 362 F.2d 611. See also, Bullard Co. v. N.L.R.B., 253 F.Supp. 391 (D.C., D.C., 1966), where the election was held valid but the Board had attempted to set it aside because the Board agent's actions, similar to actions in this case, gave the appearance of bias favoring the employer. In the instant case there are conflicting statements regarding Board agents ignoring company observers and seeking advice only from union observers; conflicting statements on whether the agent permitted the union observer to campaign during the voting; and, most seriously, conflicting statements as to whether the ballot box was left unattended near union observers for 10–15 minutes.

There appears to be a head-on conflict of evidence regarding the unattendance of the ballot box. In Sonoco Products Co. v. N.L.R.B., 9 Cir., 1968, 399 F.2d 835, the Court said:

"The Regional Director cannot cause [employer's] statement to vanish by conducting his own examination; although the Board's agents may discover evidence suggesting one result, that does not mean, where an employer or the union has presented evidence to the contrary, that there is no substantial and material factual issue."

The other points made by the Company, already denominated insubstantial, without specifically enumerating the long list, require no further consideration by the Board.

As to the issues hereinabove discussed, enforcement denied, and remanded for further hearings.

Enforcement denied and remanded.