**BUSH HOG, INC., Petitioner, Cross-Respondent,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner.**

**No. 26918.**

United States Court of Appeals Fifth Circuit.

Dec. 18, 1969.

seeks enforcement of its order in full. We agree with the Board and enforce.

The union emerged as the victor in a representation election conducted by the Board. On the day of the election the company discovered a stack of union literature in the tool and die room. After the election there were found in the stack, intermingled with union handbills, six NLRB election information leaflets, each having on its front page union stickers stating "The United Steelworkers of America, AFL–CIO–CLC" and "Vote Yes."

The company filed timely objections for the purpose of having the election set aside and another election held. The principal objection was that the presence of the stickers made the NLRB leaflets partisan messages, *i. e.*, an endorsement of the union by the Board.

William F. Gardner, N. Lee Cooper, Cabaniss, Johnston, Gardner & Clark, Birmingham, Ala., Sam Earle Hobbs, Hobbs & Hain, Selma, Ala., for petitioner Bush Hog, Inc.

Marcel Mallet-Prevost, Lynn D. Poole, Asst. Gen. Counsel, Washington, D. C., John F. LeBus, Director, New Orleans, La., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Nancy M. Sherman, Atty., N.L.R.B., for National Labor Relations Bd.

Bredhoff & Gottesman, Washington, D. C., Cooper, Mitch & Crawford, George C. Longshore, Birmingham, Ala., Bernard Kleiman, Gen. Counsel, United Steelworkers of America, Pittsburgh, Pa., Michael H. Gottesman, Washington, D. C., amici curiae, for United Steelworkers of America, AFL–CIO.

Before RIVES, BELL and DYER, Circuit Judges.

DYER, Circuit Judge:

This is a petition by Bush Hog, Inc., to review and set aside an order of the National Labor Relations Board [1] requiring the company to bargain with the union.[2] By cross-application the Board

An administrative investigation of the objections raised by the company was conducted.[3] All parties were permitted to tender affidavits. It was established that one employee had seen one of the altered leaflets but could not remember under what circumstances, and that another employee had seen one of the leaflets attached to a machine with the union stickers. There was no evidence to prove who altered the six leaflets or attached one to the machine.

The Regional Director concluded that the company's objections were not substantial and recommended that they be overruled and the union certified. The Board subsequently found that the company's exceptions raised "no material or substantial issues of fact or law which would warrant reversal," denied the company's request for a post-election hearing, and certified the union as the employees' bargaining representative. On the ground that the Board's certification of the union was invalid the company refused to recognize the certification and to bargain with the union.

---

1. 173 NLRB 74, October 30, 1968.

2. United Steelworkers of America, AFL-CIO-CLC.

3. The investigation was without a hearing pursuant to the Board's Rules and Regulations (§ 102.69(c), 29 C.F.R. 102.69 (c)).

Whether the election should be set aside because of the altered NLRB leaflets is the crucial issue before us. Also involved is whether the company is entitled to a post-election hearing.

Reading into our holding in Delta Drilling Co. v. N. L. R. B., 5 Cir. 1969, 406 F.2d. 109, and the Board's decision in Rebmar, Inc., 173 N.L.R.B. 215 (1968), a *per se* rule that it is necessary to conduct another election whenever a Board document has been altered to convey a partisan message, the company contends that in this case there was a plain violation of the Board's established policy and that the bargaining order must therefore be set aside.

The Board counters that in its evaluation of election objections each case must be measured on its facts with an *ad hoc* rather than a *per se* approach in the resolution of the issues. Furthermore, that among the factors to be considered in evaluating objections is whether the conduct in question is attributable to either of the parties to the election, and whether the conduct itself would likely have had a substantial impact on the voters. Since the Board's investigation failed to reveal who was responsible for placing the stickers on the leaflets, but did establish that the number of voters affected was insubstantial, the Board urges us to enforce its order.

We begin by iterating what now must be known by everyone in the labor-management arena, that the burden is on the party seeking to overturn an election to show that what was done affected the fairness of the representative election, N. L. R. B. v. Mattison Machine Works, 1961, 365 U.S. 123, 81 S. Ct. 434, 5 L.Ed.2d 455; Southwestern Portland Cement Co. v. N. L. R. B., 5 Cir. 1969, 407 F.2d 131; Home Town Foods, Inc. v. N. L. R. B., 5 Cir. 1967, 379 F.2d 241. It is the function of the Board to provide a "laboratory" in which the free desires of the employees can be determined, N. L. R. B. v. Houston Chronicle Publishing Co., 5 Cir. 1962, 300 F.2d 273, but falling short of this ideal condition is not always grounds for upsetting an election, Shoreline Enterprises of America, Inc. v. N. L. R. B., 5 Cir. 1959, 262 F.2d 933, 69 A.L.R.2d 1174. The determination of the dispute is within the province of the Board and "judicial review is limited to ascertaining whether the Board's determination is within reasonable bounds." N. L. R. B. v. Laney and Duke Storage Warehouse Co., 5 Cir. 1966, 369 F.2d 859.

In this frame of reference we reject the company's broad premise that every election must be set aside whenever any of the Board's leaflets have been altered and distributed, regardless of the number involved, and regardless of the identity or lack of identity of those responsible. Neither our *Delta Drilling* nor the Board's *Rebmar* support the company's position. They plainly are not analogous to this case. In *Delta Drilling* the N. L. R. B. agent who conducted the election was observed by a company supervisor in the motel room of the union representative during the election. We denied enforcement, holding that the company might well have a lack of confidence in the election process when such questionable activity of a Board agent occurs. *Rebmar* is equally inapposite. It involved reproduction of portions of a board's election notice on a propaganda handbill admittedly prepared and widely distributed by the union. In the other cases relied on by the company[4] the Board's representatives did not demonstrate impartiality in the outcome of the election, and since the Board violated its duty of neutrality the elections had to be set aside. That this is a wholly different situation than that where the identity of the wrongdoer is unknown is self evident.

---

4. N. L. R. B. v. Monroe Auto Equipment Co., 5 Cir. 1969, 406 F.2d 177; N. L. R. B. v. Fresh'nd Aire Co., 7 Cir. 1955, 226 F.2d 737; and N. L. R. B. v. West Texas Utilities Co., 5 Cir. 1954, 214 F.2d 732.

The distinction is pointed up in Allied Electrical Products, 109 N.L.R.B. 1270 (1954), in which the Board said:

> Upon consideration, the Board has decided that in the future it will not permit the reproduction of any document purporting to be a copy of the Board's official ballot, other than one completely unaltered in form and content and clearly marked sample on its face, and upon objection validly filed, will set aside the results of any election in which the *successful party* has violated this rule. (emphasis supplied)

*Id.* at 1272. But unlike *Allied*, there was no showing in the instant case that the union, the successful party, was responsible for the alterations in the Board's leaflets. We think it is clear that conduct not attributable to the opposing party cannot be relied upon to set aside an election. The only exception to this general principle, not applicable here, is where coercive and disruptive conduct or other action is so aggravated that a free expression of choice of representation is impossible. *See* N. L. R. B. v. Smith Industries, Inc., 5 Cir. 1968, 403 F.2d 889; Home Town Foods, Inc. v. N. L. R. B., *supra*; N. L. R. B. v. Tampa Crown Distributors, Inc., 5 Cir. 1959, 272 F.2d 470. Any other rule would invite third parties or one of the protagonists who doubted the election outcome to anonymously create incidents and then attempt to use them to set aside the election. We are unwilling to accept the company's broad contention that Board knowledge of the wrongdoer is an immaterial consideration in every case.

The company next attacks as contrary to the Board's settled policy its finding that no employee could have been misled because of the small number of the Board's election information leaflets found to have been altered. The company argues that "the number of instances of interference, or the number of employees directly involved, are not material to the issue." United States Rubber Co., 86 N.L.R.B. 3 (1949).

In a given case we might have no difficulty in accepting this abstract statement. But here it is a text without a context. In contested elections where the interference is known to have been created by one of the parties, the Board has refused to apply a quantitative measurement test. Each of the authorities relied on by the company falls within this category. But where, as here, there was no evidence of the identity of the perpetrators of the offense, the number of untouched leaflets was large, only six altered leaflets were discovered in a stack of union literature, a single employee obtained a leaflet with a sticker but could not remember when or where or from whom he obtained it, and one such leaflet was "stuck up on the press brake," we conclude that the Board properly determined that the company failed to sustain its burden of showing that the election was not fairly conducted. As we pointed out in Manning, Maxwell & Moore, Inc. v. N. L. R. B., 5 Cir. 1963, 324 F.2d 857:

> Where there was no proof that the conduct was attributable to the union and where the number of voters threatened [influenced] was insufficient to affect the outcome of the election, it can hardly be said that the Director acted arbitrarily in upholding the election.

*Id.* at 858.

The company's further contention that the Board should have held a post-election hearing is without merit. The company failed to make a prima facie case for such a hearing because there was no evidence which if credited would justify setting aside the election. N. L. R. B. v. Singleton Packing Corp., 5 Cir. 1969, 418 F.2d 275; N. L. R. B. v. Genesco, Inc., 5 Cir. 1969, 406 F.2d 393; N. L. R. B. v. Smith Industries, Inc., *supra;* United States Rubber Co. v. N. L. R. B., 5 Cir. 1967, 373 F.2d 602. The Board's order is

Enforced.