**GULF COAST AUTOMOTIVE WAREHOUSE COMPANY, INC., Petitioner, Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner.**

No. 77–2784.

United States Court of Appeals, Fifth Circuit.

Feb. 5, 1979.

V. Scott Kneese, Robert F. McBee, Houston, Tex., for petitioner, cross-respondent.

Elliott Moore, Deputy Associate Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, John S. Irving, Gen. Counsel, Peter M. Bernstein, Atty., N.L.R.B., Washington, D. C., for N.L.R.B.

Robert Allen, Washington, D. C., for other interested parties.

Before GEE and VANCE, Circuit Judges, and HUNTER, District Judge.*

VANCE, Circuit Judge:

This is a petition by Gulf Coast Automotive Warehouse Company, Inc. for review of a National Labor Relations Board summary judgment and order, and the Board's cross-application for enforcement. The controversy arises out of an organizational effort among the company's warehouse employees.

Gulf Coast is engaged in the wholesale automotive parts business in Houston, Texas. In May 1976 the Retail Clerks Union, Local 455 petitioned to organize Gulf Coast's warehouse and clerical employees.

* Senior District Judge for the Western District of Louisiana, sitting by designation.

Following a representation hearing on June 8 and 21, 1976, the appropriate bargaining unit was held to be all full- and part-time workers employed in the warehouse.[1]

An election was held on August 13, 1976. The union won by a vote of twenty-eight to six. Gulf Coast objected to certain union activities that it claims destroyed the "laboratory conditions" necessary for a valid election. Among the alleged illegalities were promises that initiation fees for employees signing union authorization cards prior to the election would be waived in violation of *NLRB v. Savair Manufacturing Co.,* 414 U.S. 270, 94 S.Ct. 495, 38 L.Ed.2d 495 (1973); promises of reduced dues and increased strike benefits; payment of excessive fees to employees testifying at the representation hearing; and employment of harassing tactics designed to coerce employees into joining the union. Despite these objections, the election results were certified by the Regional Director after an ex parte investigation and the Board denied review. The company refused to bargain in order to test the validity of the certification, and the union then brought the unfair labor practice charge, which is the subject of this review.

Gulf Coast urges that the Board improperly granted summary judgment in the unfair labor practice proceeding and erroneously refused to set aside the election. Alternatively, it alleges that the Board erred in refusing to hold an evidentiary hearing on the company's objections.

▪ It is axiomatic that the Board has wide discretion in determining whether an election has been fairly conducted. *E. g., United Steelworkers of America v. NLRB,* 496 F.2d 1342 (5th Cir. 1974); *NLRB v. White Knight Manufacturing Co.,* 474 F.2d 1064 (5th Cir. 1973). We cannot overturn the Board's decision on factual disputes re-

lating to representation matters unless we find it to be unsupported by substantial evidence. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). The Board's Regional Director overruled Gulf Coast's objections concerning harassment, overpayment of witness fees and illegal promise of increased benefits and reduced dues, finding that the evidence supporting these allegations did not raise substantial issues affecting the outcome of the election. We agree. We also conclude, however, that the Board did not properly resolve the dispute concerning the *Savair* violation. On this issue the case must be remanded for an evidentiary hearing.

▪ A post-election hearing is required in representation proceedings only when objections to the election raise substantial and material factual issues. 29 C.F.R. § 102.-69(c). This court has construed the standard to mean that a hearing must be held if the party opposing the election presents evidence which, if true, would warrant setting the election aside. *E. g., NLRB v. White Knight Manufacturing Co., supra; NLRB v. Golden Age Beverage Co.,* 415 F.2d 26 (5th Cir. 1969); *NLRB v. Monroe Auto Equipment Co., Hartwell Division,* 406 F.2d 177 (5th Cir. 1969), *cert. denied* 412 U.S. 928, 93 S.Ct. 2752, 37 L.Ed.2d 155 (1973); *NLRB v. Genesco, Inc.,* 406 F.2d 393 (5th Cir. 1969); *United States Rubber Co. v. NLRB,* 373 F.2d 602 (5th Cir. 1967).

▪ Here, Gulf Coast submitted the sworn affidavits of two [2] employees describing union representations that there would be no initiation fee for anyone signing union cards before the election. The same employees submitted affidavits to the Board during its ex parte investigation, and in considerable detail reiterated the promises of waiver made by the union. These

---

1. Gulf Coast complains that certain warehouse employees, designated zone foremen, were supervisory personnel and thus, were improperly included in the bargaining unit. We find that substantial evidence supports the Regional Director's conclusion that these zone foremen were supervisors in name only and that they

properly constituted part of the bargaining unit. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

2. A third employee furnished affidavits which lack detail but generally support the affidavits of the other two.

allegations, if true, are sufficient to set aside the election, since they charge violations of the doctrine announced in *NLRB v. Savair Manufacturing Co., supra.* The Regional Director, however, found that no unlawful waiver had been made. To reach this conclusion, he relied on statements by union officials that no employee had been asked to join the union prior to the election and that the employees had been informed of the union's past practice of waiving initiation fees for all employees joining the union up to 30 days after the election. The Regional Director provided no opportunity for Gulf Coast to subject the testimony of the union witnesses to the "cleansing rigors of cross-examination." *Beaird-Poulan Division, Emerson Electric Co. v. NLRB,* 571 F.2d 432, 434 (8th Cir. 1978).

■ The Regional Director's decision discloses that he placed disproportionate emphasis on several factors: (1) no employees were asked to actually join the union before the election, (2) the policy of the union is contrary to the employer's contentions, and (3) union representatives were reported as having correctly explained the union's policy at later meetings with employees.

Our capsulation of the *Savair* holding in *NLRB v. Con-Pac, Inc.,* 509 F.2d 270 (5th Cir. 1975) provides a suitable starting place for our consideration of these factors:

> [U]nion waiver of initiation fees in return for employees' signatures on authorization cards violated the conditions of employee free choice that must be preserved for an N.L.R.B. certification election to be valid.

*Id.* at 272. When or whether Gulf Coast's employees ultimately joined the union may be irrelevant. The issue under consideration is whether the process was contaminated by the impermissible purchase of support. As the Supreme Court said in *Savair*:

> Whatever his true intentions, an employee who signs a recognition slip prior to an election is indicating to other workers that he supports the union. His outward manifestation of support must often serve as a useful campaign tool in the union's hands to convince other employees to vote for the union, if only because many employees respect their coworkers' views on the unionization issue. By permitting the union to offer to waive an initiation fee for those employees signing a recognition slip prior to the election, the Board allows the union to buy endorsements and paint a false portrait of employee support during its election campaign.

*Savair, supra,* 414 U.S. at 277, 94 S.Ct. at 499.

■ Prior union policy may have evidentiary value but it is not the ultimate question. Employees cannot be assumed to know of the union's past policies and practices. For the most part, they know what they are told. The question is not what the union should have communicated to the employees. As the Board itself has recognized, the proper consideration is the objective interpretation by the employees of the message actually communicated to them by the union. *California State Automobile Association,* 214 N.L.R.B. No. 27 (1974). In the absence of a hearing neither we nor the Board may properly assume that correct statements concerning initiation fees had the effect of sanitizing a contaminated process.

The affidavit of the union's inside organizer, Michael White,[3] stated that as he distributed authorization cards to employees, he repeated the challenged statements, previously told to him by union agents. White says that a majority of employees in the unit returned signed cards to him. The Board cannot merely shut its eyes to evidence supporting the inference that the cards were signed in reliance on such impermissible statements.

■ We give full recognition to the wide discretion which has been vested in the

---

**3.** Michael White was a zone foreman who participated in the organizational effort on behalf of the union.

Board. We are equally aware of the heavy burden that the employer must bear. Our decision should not be interpreted as telegraphing any indication of this court's inclination with respect to the ultimate merits of the case. We hold simply that the Board does not have discretion to deny a hearing to a losing party who has supplied prima facie evidence raising substantial and material issues that would warrant setting the election aside.

Gulf Coast presented sufficient evidence to require a hearing on its *Savair* objections. Accordingly, the summary judgment and order of the Board is set aside and will not be enforced. The case is remanded for an evidentiary hearing on the validity of the representation election and further proceedings not inconsistent with this opinion.

ENFORCEMENT DENIED AND CASE REMANDED WITH DIRECTIONS.